No. 98,489

LANDMARK NATIONAL BANK, *Plaintiff/Appellee*, v. BOYD A. KESLER, *Appellee/Cross-appellant*, MILLENNIA MORTGAGE CORPORATION, *Defendant*, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. and SOVEREIGN BANK, *Appellants/Cross-appellees*, and DENNIS BRISTOW and TONY WOYDZIAK, *Intervenors/Appellees*.

(216 P.3d 158)

Opinion filed August 28, 2009.

*Tyson C. Langhofer* and *Court T. Kennedy*, of Stinson Morrison Hecker, L.L.P., of Wichita, for appellants/cross-appellees.

*Ted E. Knopp*, of Ted E. Knopp, Chartered, of Wichita, for appellee/cross-appellant Boyd A. Kesler.

*David A. Schatz*, of Husch Blackwell Sanders L.L.P., of Kansas City, Missouri, for *amicus curiae* American Land Title Association.

The opinion of the court was delivered by

ROSEN, J.: Mortgage Electronic Registration Systems, Inc. (MERS) and Sovereign Bank seek review of an opinion by our Court of Appeals holding that a nonlender is not a contingently necessary party in a mortgage foreclosure action and that due process does not require that a nonlender be allowed to intervene in a mortgage foreclosure action.

The facts underlying this appeal are not in dispute. On March 19, 2004, Boyd Kesler secured a loan of $50,000 from Landmark National Bank (Landmark) with a mortgage registered in Ford County, Kansas. On March 15, 2005, he secured an additional loan of $93,100 from Millennia Mortgage Corp. (Millennia) through a second mortgage registered in Ford County. Both mortgages were secured by the same real property located in Ford County.

The second mortgage lies at the core of this appeal. That mortgage document stated that the mortgage was made between Kesler—the "Mortgagor" and "Borrower"—and MERS, which was acting "solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns." The document then identified Millennia as the "Lender." At some subsequent time, the mortgage may have been assigned to Sovereign and Sovereign may have taken physical possession of the note, but that assignment was not registered in Ford County.

On April 13, 2006, Kesler filed for bankruptcy in the United States Bankruptcy Court for the District of Kansas, Wichita Division. He named Sovereign as a creditor; although he claimed the secured property as exempt, he filed an intention to surrender the property. The bankruptcy court discharged his personal liability on November 16, 2006. The record contains little documentation or evidence explaining the interplay of the bankruptcy and the fore-

closure action, except to suggest that the bankruptcy action may have given Sovereign constructive notice of a possible default on payments.

On July 27, 2006, Landmark filed a petition to foreclose on its mortgage, serving and naming as defendants Kesler and Millennia. It did not serve notice of the litigation on MERS or Sovereign. In the absence of answers from either defendant, the trial court entered default judgment against Kesler and Millennia on September 6, 2006. The trial court then filed an order of sale on September 29, 2006. Notice of the sale was initially published in the Dodge City Daily Globe on October 4, 2006. On October 26, 2006, Dennis Bristow and Tony Woydziak purchased the secured property at a sheriff's sale for $87,000, and on November 14, 2006, Landmark filed a motion to confirm sale of the secured property.

Also on November 14, 2006, Sovereign filed an answer to the foreclosure petition, asserting an interest in the real property as the successor in interest to Millennia's second mortgage. A week later, on November 21, 2006, Sovereign filed a motion to set aside or vacate the default judgment and an objection to confirmation of sale. The motion asserted that MERS was a K.S.A. 60-219(a) contingently necessary party and, because Landmark failed to name MERS as a defendant, Sovereign did not receive notice of the proceedings. The motion asked the court to vacate the default judgment under K.S.A. 60-260(b). The motion further asked the court to set aside the surplus from the sale, holding it to later to be paid to Sovereign if the court elected not to grant the motion to vacate.

On November 27, 2006, Kesler filed a motion seeking distribution of surplus funds from the sheriff's sale, and on January 3, 2007, Kesler filed a motion joining Landmark's earlier motion to confirm the sheriff's sale. The trial court conducted a hearing on the various motions on January 8, 2007, at which counsel for Landmark, Kesler, Sovereign, and Bristow appeared and presented their cases. The trial court deferred judgment pending review of the pleadings.

On January 16, 2007, MERS filed a motion joining Sovereign's motion to vacate the journal entry of default judgment and ob-

jecting to confirmation of the sheriff's sale, followed on January 18, 2007, by a motion to intervene under K.S.A. 60-224. MERS proffered an answer and a cross-claim to the original foreclosure petition.

On that same date, the trial court filed an order finding that MERS was not a real party in interest and Landmark was not required to name it as a party to the foreclosure action. The court found that MERS served only as an agent or representative for Millennia. The court also found that Sovereign's failure to register its interest with the Ford County Register of Deeds precluded it from asserting rights to the mortgage after judgment had been entered. The court denied the motions to set aside judgment and to intervene and granted the motions to confirm the sale and to distribute the surplus.

On February 1, 2007, MERS and Sovereign filed motions to reconsider. The trial court conducted a hearing on those motions, at which counsel for Kesler, Sovereign, and MERS appeared and argued. The trial court subsequently entered an order denying the motions to reconsider. MERS and Sovereign filed timely notices of appeal.

Prior to the appellants submitting their briefs, the purchasers Bristow and Woydziak filed a motion with the Court of Appeals seeking leave to intervene in the appeal. The Court of Appeals granted the motion. Bristow and Woydziak then filed a motion to compel the office of the Clerk of the Appellate Courts to docket their cross-appeal, which the Court of Appeals denied. The Court of Appeals affirmed the district court in *Landmark National Bank v. Kesler*, 40 Kan. App. 2d 325, 192 P.3d 177 (2008). This court granted the appellants' petition for review.

## I. Did The District Court Abuse Its Discretion In Denying MERS's Motion To Set Aside Default Judgment And Motion To Intervene As A Contingently Necessary Party?

### A. Standard of Review

Denial of a motion to set aside a default judgment is subject to review under a standard of abuse of discretion. See *Canaan v. Bartee*, 272 Kan. 720, Syl. ¶ 9, 35 P.3d 841 (2001). A district court

decision that denies a motion to join a party as a necessary party under K.S.A. 60-219(a) is also subject to an abuse of discretion standard of review. *State ex rel. Graeber v. Marion County Landfill, Inc.*, 276 Kan. 328, 352, 76 P.3d 1000 (2003). Whether the evidence demonstrates that the statutory requirements for joinder have been met is a mixed question of fact and law. When reviewing a mixed question of fact and law, an appellate court reviews the district court's factual findings for substantial competent evidence and reviews de novo the district court's legal conclusions. *State v. Fisher*, 283 Kan. 272, 286, 154 P.3d 455 (2007).

Intervention as a matter of right is subject to the same mixed determination of law and fact as is joinder. K.S.A. 60-224(a). Permissive intervention lies within the discretion of the district court. K.S.A. 60-224(b); see *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 n.1, 94 L. Ed. 2d 389, 107 S. Ct. 1177 (1987) (Brennan, J., concurring) (discussing the different standards applied to Federal Rule of Civil Procedure 24[a] and [b]).

Judicial discretion is abused when no reasonable person would take the view adopted by the trial court. *Harsch v. Miller*, 288 Kan. 280, 293, 200 P.3d 467 (2009). Review for abuse of discretion includes review to determine whether erroneous legal conclusions guided the exercise of discretion. *State v. Skolaut*, 286 Kan. 219, Syl. ¶ 3, 182 P.3d 1231 (2008).

To the extent that this appeal requires interpretation of statutory mandates, this court exercises unlimited review. See *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008).

### B. Analysis

While this is a matter of first impression in Kansas, other jurisdictions have issued opinions on similar and related issues, and, while we do not consider those opinions binding in the current litigation, we find them to be useful guideposts in our analysis of the issues before us.

At the heart of this issue is whether the district court abused its discretion in refusing to set aside the default judgment and in refusing to join MERS as a contingently necessary party.

The statutory provision for setting aside a default judgment is K.S.A. 60-255(b), which refers to K.S.A. 60-260(b), relating to relief from judgment, in a manner similar to the correlation between the corresponding federal rules, Fed. R. Civ. Proc. 55(c) and 60(b). K.S.A. 60-260(b) allows relief from a judgment based on mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence that could not have been timely discovered with due diligence; fraud or misrepresentation; a void judgment; a judgment that has been satisfied, released, discharged, or is no longer equitable; or any other reason justifying relief from the operation of the judgment. K.S.A. 60-260(b) requires that the motion be made by a party or by a representative who is in privity with a party, thus precluding a nonparty of standing to file such a motion. K.S.A. 60-255(b) does not, however, require that the movant be a party to the action. See 11 Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 2865 (1995).

It is appropriate—and probably necessary—for a trial court to consider evidence beyond the bare pleadings to determine whether it should set aside a default judgment. In a motion to set aside default, a trial court should consider a variety of factors to determine whether the defendant (or would-be defendant) had a meritorious defense, and the burden of establishing a meritorious defense rests with the moving party. See *Canaan v. Bartee*, 272 Kan. 720, 731, 35 P.3d 841 (2001).

This conclusion is consistent with the construction of the parallel federal rules:

"Generally, a federal court will grant a motion under Rule 55(c) only after some showing is made that if relief is granted the outcome of the suit may be different than if the entry of default or the default judgment is allowed to stand; the showing should underscore the potential injustice of allowing the case to be disposed of by default. In most cases, therefore, *the court will require the party in default to demonstrate a meritorious defense to the action as a prerequisite to vacating the default entry or judgment.* . . .

"A majority of the courts . . . have insisted upon a presentation of some factual basis for the supposedly meritorious defense. . . .

"The demonstration of a meritorious defense is not expressly called for by the federal rules and, therefore, *the nature and extent of the showing that will be necessary is a matter that lies within the court's discretion.* . . . *The underlying*

*concern is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default."* (Emphasis added.) 10A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2697 (1998).

We accordingly find that it was incumbent on the trial court, when ruling on the motion to set aside default judgment, to consider whether MERS would have had a meritorious defense if it had been named as a defendant and whether there was some reasonable possibility MERS would have enjoyed a different outcome from the trial if its participation had precluded default judgment.

In determining whether MERS was a contingently necessary party that was entitled to relief from judgment, the trial court was required to consider the factors of K.S.A. 60-219(a) in addition to those of K.S.A. 60-260(b).

K.S.A. 60-219(a) defines which parties are to be joined in an action as necessary for just adjudication:

"A person is contingently necessary if (1) complete relief cannot be accorded in his absence among those already parties, or (2) he claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action in his absence may (i) as a practical matter substantially impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

The law relating to a contingently necessary party closely resembles the law relating to vacating a default judgment, in that both require the party asserting the interest to demonstrate a meritorious defense or an interest that may be impaired. In order to prevail on appeal, MERS must demonstrate that the trial court abused its discretion when it found, based on the testimony, evidence, and pleadings before the court at the time when it considered the motion to set aside default judgment, that MERS lacked a meritorious defense to the foreclosure proceeding or had an interest that could be impaired. We will accordingly examine the nature of the interest in the mortgage that MERS has demonstrated.

Sovereign is a financial institution that putatively purchased the Kesler mortgage from Millennia but did not register the transaction

in Ford County. The relationship of MERS to the transaction is not subject to an easy description. One court has described MERS as follows:

"MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members." *Mortgage Elec. Reg. Sys., Inc. v. Nebraska Dept. of Banking*, 270 Neb. 529, 530, 704 N.W.2d 784 (2005).

The second mortgage designated the relationships of Kesler, MERS, and Millennia and established payment and notice obligations. That document purported to define the role played by MERS in the transaction and the contractual rights of the parties.

The document began by identifying the parties:

"THIS MORTGAGE is made this 15th day of March 2005, between the Mortgagor, BOYD A. KESLER, (herein 'Borrower'), and the Mortgagee, Mortgage Electronic Registration Systems, Inc. ('MERS'), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. MILLENNIA MORTGAGE CORP., A CALIFORNIA CORPORATION is organized and existing under the laws of CALIFORNIA and has an address of 23046 AVENIDA DE LA CARLOTA #100, LAGUNA HILLS, CALIFORNIA 92653 (herein 'Lender')."

The third paragraph of the first page of the mortgage document conveyed a security interest in real estate:

"TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the County of FORD, State of Kansas."

The first paragraph of the second page of the mortgage document contains the following language that apparently both limits and expands MERS's rights:

"Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Mortgage."

Paragraph 7 of the mortgage document provides the lender with the right to protect the security:

"If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest."

Paragraph 9 of the mortgage document provides the lender with rights in the event of a condemnation:

"Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this mortgage."

Paragraph 12 of the mortgage document addresses notice:

"Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) *any notice to Lender* shall be given by certified mail *to Lender's address stated herein* or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein." (Emphasis added.)

The signature page of the mortgage document contains language relating to notice in the event of default:

*"Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action."* (Emphasis added.)

The mortgage instrument states that MERS functions "solely as nominee" for the lender and lender's successors and assigns. The word "nominee" is defined nowhere in the mortgage document, and the functional relationship between MERS and the lender is likewise not defined. In the absence of a contractual definition, the parties leave the definition to judicial interpretation.

What meaning is this court to attach to MERS's designation as nominee for Millennia? The parties appear to have defined the word in much the same way that the blind men of Indian legend described an elephant—their description depended on which part they were touching at any given time. Counsel for Sovereign stated to the trial court that MERS holds the mortgage "in street name, if you will, and our client the bank and other banks transfer these mortgages and rely on MERS to provide them with notice of foreclosures and what not." He later stated that the nominee "is the mortgagee and is holding that mortgage for somebody else." At another time he declared on the record that the nominee

"is more like a trustee or more like a corporation, a trustee that has multiple beneficiaries. Now a nominee's relationship is not a trust but if you have multiple beneficiaries you don't serve one of the beneficiaries you serve the trustee of the trust. You serve the agent of the corporation."

Counsel for the auction property purchasers stated that a nominee is "one designated to act for another as his representative in a rather limited sense." He later deemed a nominee to be "like a power of attorney."

Black's Law Dictionary defines a nominee as "[a] person designated to act in place of another, usu. in a very limited way" and as "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." Black's Law Dictionary 1076 (8th ed. 2004). This definition suggests that a nominee possesses few or no legally enforceable rights beyond those of a principal whom the nominee serves.

In its opinion below, the Court of Appeals cited *Thompson v. Meyers*, 211 Kan. 26, 30, 505 P.2d 680 (1973), which provides the only discussion in Kansas of the legal significance of a nominee:

"In common parlance the word 'nominee' has more than one meaning. Much depends on the frame of reference in which it is used. In Webster's Third New International Dictionary, unabridged, one of the definitions given is 'a person named as the recipient in an annuity or grant.' We view a 'nominee', as the term was used by the parties here, not simply in the sense of a straw man or limited agent. . . , but in the larger sense of a person designated by them to purchase the real estate, who would possess all the rights given a buyer . . . ."

The legal status of a nominee, then, depends on the context of the relationship of the nominee to its principal. Various courts have interpreted the relationship of MERS and the lender as an agency relationship. See *In re Sheridan*, 2009 WL 631355, at *4 (Bankr. D. Idaho 2009) (MERS "acts not on its own account. Its capacity is representative."); *Mortgage Elec. Registration System, Inc. v. Southwest Homes of Arkansas, Inc.*, 2009 Ark. 152, ___, 301 S.W.3d 1, 2009 WL 723182 (2009) ("MERS, by the terms of the deed of trust, and its own stated purposes, was the lender's agent"); *LaSalle Bank Nat. Ass'n v. Lamy*, 2006 WL 2251721, at *2 (N.Y. Sup. 2006) (unpublished opinion) ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.")

The relationship that MERS has to Sovereign is more akin to that of a straw man than to a party possessing all the rights given a buyer. A mortgagee and a lender have intertwined rights that defy a clear separation of interests, especially when such a purported separation relies on ambiguous contractual language. The law generally understands that a mortgagee is not distinct from a lender: a mortgagee is "[o]ne to whom property is mortgaged: the mortgage creditor, or lender." Black's Law Dictionary 1034 (8th ed. 2004). By statute, assignment of the mortgage carries with it the assignment of the debt. K.S.A. 58-2323. Although MERS asserts that, under some situations, the mortgage document purports to give it the same rights as the lender, the document consistently refers only to rights of the lender, including rights to receive notice

of litigation, to collect payments, and to enforce the debt obligation. The document consistently limits MERS to acting "solely" as the nominee of the lender.

Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable.

"The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. [Citation omitted.] Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. [Citation omitted.] The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust." *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo. App. 2009).

The Missouri court found that, because MERS was not the original holder of the promissory note and because the record contained no evidence that the original holder of the note authorized MERS to transfer the note, the language of the assignment purporting to transfer the promissory note was ineffective. "MERS never held the promissory note, thus its assignment of the deed of trust to Ocwen separate from the note had no force." 284 S.W.3d at 624; see also *In re Wilhelm*, 407 B.R. 392 (Bankr. D. Idaho 2009) (standard mortgage note language does not expressly or implicitly authorize MERS to transfer the note); *In re Vargas*, 396 B.R. 511, 517 (Bankr. C.D. Cal. 2008) ("[I]f FHM has transferred the note, MERS is no longer an authorized agent of the holder unless it has a separate agency contract with the new undisclosed principal. MERS presents no evidence as to who owns the note, or of any authorization to act on behalf of the present owner."); *Saxon Mortgage Services, Inc. v. Hillery*, 2008 WL 5170180 (N.D. Cal. 2008) (unpublished opinion) ("[F]or there to be a valid assignment, there must be more than just assignment of the deed alone; the note must also be assigned. . . . MERS purportedly assigned both the deed of trust and the promissory note. . . . However, there is no evidence of record that establishes that MERS either held the

promissory note or was given the authority . . . to assign the note.").

What stake in the outcome of an independent action for foreclosure could MERS have? It did not lend the money to Kesler or to anyone else involved in this case. Neither Kesler nor anyone else involved in the case was required by statute or contract to pay money to MERS on the mortgage. See *Sheridan*, 2009 WL 631355, at *4 ("MERS is not an economic 'beneficiary' under the Deed of Trust. It is owed and will collect no money from Debtors under the Note, nor will it realize the value of the Property through foreclosure of the Deed of Trust in the event the Note is not paid."). If MERS is only the mortgagee, without ownership of the mortgage instrument, it does not have an enforceable right. See *Vargas*, 396 B.R. 517 ("[w]hile the note is 'essential,' the mortgage is only 'an incident' to the note" [quoting *Carpenter v. Longan*, 16 Wall. 271, 83 U.S. 271, 275, 21 L. Ed 313 (1872)]).

When it found that MERS did not have an interest in the property that was impaired by the default judgment, the trial court properly considered four factors: (1) that the written pleadings and oral arguments by MERS and Sovereign identified MERS as acting only as a digital mortgage tracking service; (2) that counsel for MERS insisted that no evidence of a financial or property interest was necessary and its argument rested solely on its identity as the mortgagee on the mortgage document, when counsel was directly challenged to produce evidence of a financial or property interest; (3) that evidence showed that Sovereign was on notice that Landmark had leave of the bankruptcy court to proceed with foreclosure and that MERS did not attempt to intervene in the action until after its alleged principal, Sovereign, had already had its motion to intervene and to set aside judgment denied; and (4) that the case law submitted by the parties weighed more in favor of denying the motion. These factors were properly before the trial court and were consistent with the evidence and supported the court's legal reasoning.

Counsel for MERS explicitly declined to demonstrate to the trial court a tangible interest in the mortgage. Parties are bound by the formal admissions of their counsel in an action. *Dick v. Drainage*

*District No. 2,* 187 Kan. 520, 525, 358 P.2d 744 (1961). Counsel for MERS made no attempt to show any injury to MERS resulting from the lack of service; in fact, counsel insisted that it did not have to show a financial or property interest.

MERS argued in another forum that it is *not* authorized to engage in the practices that would make it a party to either the enforcement of mortgages or the transfer of mortgages. In *Mortgage Elec. Reg. Sys. v. Nebraska Dept. of Banking,* 270 Neb. 529, 704 N.W.2d 784 (2005), MERS challenged an administrative finding that it was a mortgage banker subject to license and registration requirements.

The Nebraska Supreme Court found in favor of MERS, noting that "MERS has no independent right to collect on any debt because MERS itself has not extended credit, and none of the mortgage debtors owe MERS any money." 270 Neb. at 535. The Nebraska court reached this conclusion based on the submissions by counsel for MERS that

"MERS does not take applications, underwrite loans, make decisions on whether to extend credit, collect mortgage payments, hold escrows for taxes and insurance, or provide any loan servicing functions whatsoever. MERS merely tracks the ownership of the lien and is paid for its services through membership fees charged to its members. MERS does not receive compensation from consumers." 270 Neb. at 534.

Even if MERS was technically entitled to notice and service in the initial foreclosure action—an issue that we do not decide at this time—we are not compelled to conclude that the trial court abused its discretion in denying the motions to vacate default judgment and require joinder of MERS and Sovereign. The record lacks evidence supporting a claim that MERS suffered prejudice and would have had a meritorious defense had it been joined as a defendant to the foreclosure action. We find that the trial court did not abuse its discretion and did not commit reversible error in ruling on the postdefault motions.

We note that various arguments were presented suggesting that economic policy provides independent grounds for reversing the trial court. MERS and the *amicus curiae* American Land Title Association argue that MERS provides a cost-efficient method of

tracking mortgage transactions without the complications of county-by-county registration and title searches. The *amicus* suggests the statutory recording system is grounded in seventeenth-century property law that is entirely unsuited to twentieth-century financial transactions. While this may be true, the MERS system introduces its own problems and complications.

One such problem is that having a single front man, or nominee, for various financial institutions makes it difficult for mortgagors and other institutions to determine the identity of the current note holder.

"[I]t is not uncommon for notes and mortgages to be assigned, often more than once. When the role of a servicing agent acting on behalf of a mortgagee is thrown into the mix, it is no wonder that it is often difficult for unsophisticated borrowers to be certain of the identity of their lenders and mortgagees." *In re Schwartz,* 366 B.R. 265, 266 (Bankr. D. Mass. 2007).

"[T]he practices of the various MERS members, including both [the original lender] and [the mortgage purchaser], in obscuring from the public the actual ownership of a mortgage, thereby creating the opportunity for substantial abuses and prejudice to mortgagors . . . , should not be permitted to insulate [the mortgage purchaser] from the consequences of its actions in accepting a mortgage from [the original lender] that was already the subject of litigation in which [the original lender] erroneously represented that it had authority to act as mortgagee." *Johnson,* 2008 WL 4182397, at °4.

The *amicus* argues that "[a] critical function performed by MERS as the mortgagee is the receipt of service of all legal process related to the property." The *amicus* makes this argument despite the mortgage clause that specifically calls for notice to be given to the *lender,* not the putative mortgagee. In attempting to circumvent the statutory registration requirement for notice, MERS creates a system in which the public has no notice of who holds the obligation on a mortgage.

The Arkansas Supreme Court has noted:

"The only recorded document provides notice that [the original lender] is the lender and, therefore, MERS's principal. MERS asserts [the original lender] is not its principal. Yet no other lender recorded its interest as an assignee of [the original lender]. Permitting an agent such as MERS purports to be to step in and act without a recorded lender directing its action would wreak havoc on notice in this state." *Southwest Homes,* 2009 Ark. 152, ⎯⎯.

In any event, the legislature has established a registration requirement for parties that desire service of notice of litigation involving real property interests. It is not the duty of this court to criticize the legislature or to substitute its view on economic or social policy. *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 348, 789 P.2d 541 (1990).

## II. Did The Trial Court's Refusal To Join MERS As A Party Violate MERS's Right To Due Process?

MERS contends that the Fourteenth Amendment and §18 of the Kansas Constitution Bill of Rights guarantees of due process were violated when the foreclosure action was consummated without MERS receiving notice of the proceeding and without MERS having the opportunity to intervene in the action.

Although joinder is evaluated under an abuse of discretion standard, if a constitutional right is involved the trial judge's exercise of discretion is limited. Discretion must be exercised not in opposition to, but in accordance with, established principles of law. It is not an arbitrary power. *In re Adoption of B.G.J.*, 281 Kan. 552, 563, 133 P.3d 1 (2006).

The Fourteenth Amendment to the United States Constitution provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law."

Section 18 of the Kansas Constitution Bill of Rights provides: "All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay."

Due process provides any interested party with the elementary and fundamental right to notice of the pendency of an action and the opportunity to present its objections in any proceeding that is to be accorded finality. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1275, 136 P.3d 457 (2006) (citing *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 [1950]). In the absence of a protected property or liberty interest, there can be no due process violation. *State ex rel. Tomasic v.*

*Unified Gov't of Wyandotte County/Kansas City*, 265 Kan. 779, 809, 962 P.2d 543 (1998).

The Due Process Clause does not protect entitlements where the identity of the alleged entitlement is vague. *Castle Rock v. Gonzales*, 545 U.S. 748, 763, 162 L. Ed. 2d 658, 125 S. Ct. 2796 (2005). A protected property right must have some ascertainable monetary value. 545 U.S. at 766. Indirect monetary benefits do not establish protection under the Fourteenth Amendment. 545 U.S. at 767. An entitlement to a procedure does not constitute a protected property interest. 545 U.S. at 764.

MERS's contention that it was deprived of due process in violation of constitutional protections runs aground in the shallows of its property interest. As noted in the discussion of the first issue above, MERS did not demonstrate, in fact, did not attempt to demonstrate, that it possessed any tangible interest in the mortgage beyond a nominal designation as the mortgagor. It lent no money and received no payments from the borrower. It suffered no direct, ascertainable monetary loss as a consequence of the litigation. Having suffered no injury, it does not qualify for protection under the Due Process Clause of either the United States or the Kansas Constitutions.

Furthermore, MERS received the full opportunity to present arguments and evidence to the trial court. Only after Sovereign clearly had notice of the litigation, had filed a motion to intervene, and had participated in a hearing on the motion did MERS—Sovereign's nominee—elect to file for joinder. Despite its late decision to enter an appearance in the case, the trial court allowed MERS the opportunity to present arguments and evidence. It cannot be said that MERS was prejudicially denied notice and the opportunity to be heard.

We find that the district court did not abuse its discretion in denying the motions to vacate and for joinder and in holding that MERS was not denied due process. We accordingly affirm the district court and the Court of Appeals.