(247 P.3d 223)

No. 101,848 [1]

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., *Appellee*,
v. MICHELLE C. GRAHAM and DAVID MARTINEZ, *Appellants*,
v. COUNTRYWIDE HOME LOANS, INC., *Appellee*.

—

---

[1] **REPORTER'S NOTE:** Previously filed as an unpublished opinion, the Supreme Court granted a motion to publish pursuant to Rule 7.04 (2009 Kan. Ct. R. Annot. 54). The published version was filed with the Clerk of the Appellate Courts on October 25, 2010.

Opinion filed April 30, 2010.

*Paul D. Post,* of Topeka, for appellants.

*Staci Olvera Schorgl* and *Rebecca S. Jelinek,* of Bryan Cave LLP, of Kansas City, Missouri, for appellees Mortgage Electronic Registration Systems, Inc. and Countrywide Home Loans, Inc.

Before MARQUARDT, P.J., BUSER, J., and LARSON, S.J.

MARQUARDT, J.: Michelle Graham and David Martinez appeal the partial summary judgment granted to Mortgage Electronic

Registration Systems, Inc. (MERS), on MERS's petition to foreclose Graham and Martinez' mortgage. Graham and Martinez also appeal the summary judgment granted in favor of Countrywide Home Loans, Inc. (Countrywide), and the denial of their Kansas Consumer Protection Act (KCPA) and fraud claims. We affirm in part, reverse in part, and dismiss in part.

In August 2002, Graham executed a mortgage and promissory note for $140,000 with Countrywide for the purchase of a house. MERS, "acting solely as nominee for Countrywide," held the mortgage on the property. The property is titled in Graham's name, and she is the sole signatory on the promissory note. According to Graham's appellate brief, she and Martinez "have long considered themselves to be common law spouses, and accordingly, each recognizes that the other has an interest in this property."

Graham stopped making monthly payments on the promissory note in June 2004. MERS filed a petition to foreclose the mortgage in September 2004. MERS and Countryside named Martinez as a defendant in the foreclosure action "by virtue of his marital interest in the property." The district court dismissed the petition without prejudice after learning that Graham and Martinez had filed for Chapter 13 bankruptcy in August 2004. The bankruptcy was dismissed in February 2005 for lack of feasibility; however, Graham and Martinez filed another Chapter 13 bankruptcy in May 2005. Because of the bankruptcy filing, MERS, as nominee for Countrywide, filed a motion for relief from the automatic stay placed on the foreclosure action under 11 U.S.C. § 362 (2000).

While this second bankruptcy case was pending, Countrywide contracted with the law firm of McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC, in Roswell, Georgia, (McCalla Raymer), to analyze their troubled loans and identify borrowers who might qualify for a loan modification. On August 16, 2005, McCalla Raymer sent Michael Brunton, Graham and Martinez' attorney, a letter notifying him that a loan modification was possible. They also sent a consent form requesting authorization for them to communicate directly with Graham and Martinez. In compliance with the letter's request, Graham and Martinez provided McCalla Ray-

mer with various financial documents. Brunton signed the consent form.

On October 26, 2005, McCalla Raymer sent another letter to Brunton stating that Graham and Martinez were conditionally preapproved for a loan modification. The letter stated:

"Please be advised that our office represents [Countrywide] in your client's above referenced bankruptcy. Based upon a review of your client(s) financial package received and bankruptcy schedules, your client's loan has been conditionally pre-approved by the Investor for a loan modification. The conditions are as follows:

- Approval of motion for relief from the bankruptcy (or)
- Dismissal of the bankruptcy (if chapter 13)

"Please be advised that final terms of the loans [*sic*] modification will be determined when the loan is released out of bankruptcy.

"If your client is interested in a loan modification with our client, please contact our office immediately to discuss further. Please be advised that if your client is interested in a loan modification that the debtor would be required to consent to relief from the stay or dismiss their bankruptcy."

It is undisputed that Brunton informed Graham and Martinez about the letter, but neither Graham nor Martinez contacted McCalla Raymer. Graham and Martinez claimed they were not required to contact McCalla Raymer to obtain the loan modification.

On November 9, 2005, Graham and Martinez allowed Brunton to consent to an order lifting the automatic bankruptcy stay placed on MERS's foreclosure action. The bankruptcy court noted that an "[a]greement has been reached and the debtor has no objection to relief from stay being granted." The bankruptcy order was filed on November 30, 2005.

On November 14, 2005, McCalla Raymer sent another letter to Brunton, which included the following sentence: "Please note that if we do not hear from your office regarding this matter by 11/21/ 05, we will be forced to close our file." It is undisputed that neither Graham nor Martinez contacted McCalla Raymer concerning the November 14 letter.

On January 18, 2006, after the bankruptcy court dismissed Graham and Martinez' case for failure to make payments under the

bankruptcy plan, MERS filed a second petition to foreclose on the property. In response, Graham and Martinez added Countrywide as a third-party defendant. They filed a counterclaim against MERS and a cross-claim against Countrywide alleging that both committed fraud when MERS and Countrywide knowingly made false and misleading statements through their agent, McCalla Raymer, in the October 26, 2005, letter. Additionally, Graham and Martinez alleged MERS and Countrywide violated K.S.A. 50-626 and K.S.A. 50-627 of the KCPA, K.S.A. 50-623 *et seq.*, because the false promise to modify their loan enticed them to lift the automatic bankruptcy stay.

On July 23, 2007, MERS filed a motion for partial summary judgment and Countrywide filed a motion for summary judgment contending that the claims filed by Graham and Martinez failed as a matter of law because they provided: (1) no evidence the offer was false or misleading; (2) no evidence of deceptive or unconscionable acts or practices; (3) no evidence of actual damages; and (4) they could not be liable for any offer made by an employee of McCalla Raymer, an independent contractor.

In response, Graham and Martinez argued that they detrimentally relied on McCalla Raymer's fraudulent letter stating they had been preapproved for a loan modification and summary judgment was not appropriate because: (1) the existence of fraud is a question of fact; (2) whether a person engaged in deceptive acts or practices is also a question of fact; (3) MERS and Countrywide presented a "lame argument" that suggested McCalla Raymer "suddenly and magically appeared" without Countrywide's guidance; and (4) the loss of their $150,000 home was evidence of their damages.

On February 25, 2008, the district court granted MERS's and Countrywide's motions for summary judgment, focusing on Graham and Martinez' lack of evidence supporting their claims that (1) the loan was automatically modified after they agreed to lift the bankruptcy stay; (2) they were ready to proceed with the loan modification; or (3) MERS or Countrywide lacked good faith in offering the loan modification.

Additionally, the district court stated that Graham and Martinez failed to provide evidence they detrimentally relied on McCalla

Raymer's alleged misrepresentations. Although Graham and Martinez maintained that merely agreeing to lift the stay supported detrimental reliance, the district court determined that "Ms. Graham is in gross default of the terms of her note and mortgage," and the involuntary dismissal of their bankruptcy 2 months after lifting the stay was insufficient to establish detrimental reliance. Further, the district court noted Graham and Martinez failed to show they suffered a causal injury. They suggested that the foreclosure might have been delayed, but Graham and Martinez presented no evidence that the foreclosure would have been prevented.

The district court also determined that Graham and Martinez failed to support their KCPA claims because they neglected to offer any evidence that MERS or Countrywide intended to deceive or engage in deceptive acts or practices. Without evidence of a willful falsehood or ambiguity, or a willful failure to state a material fact, the district court concluded Graham and Martinez' KCPA claims failed. Graham and Martinez timely appeal.

### MERS's Petition to Foreclose the Mortgage

As a preliminary matter, after the parties filed their appellate briefs, Graham and Martinez submitted a letter of additional authority pursuant to Supreme Court Rule 6.09(b) (2009 Kan. Ct. R. Annot. 47) suggesting *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158 (2009), pertains to the arguments which appellants made at pages 24 through 26 of their brief.

"Standing is a question of whether the plaintiff has alleged such a personal stake in the outcome of a controversy as to warrant invocation of jurisdiction and to justify exercise of the court's remedial powers on his or her behalf. A party must have a sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of that controversy. [Citations omitted.] The party must have personally suffered some injury and there must be a causal connection between the injury and the challenged conduct." *Moorhouse v. City of Wichita*, 259 Kan. 570, 574, 913 P.2d 172 (1996) (citing *Harrison v. Long*, 241 Kan. 174, 176-77, 734 P.2d 1155, *appeal dismissed* 484 U.S. 804 [1987]).

In Kansas, standing is a component of subject matter jurisdiction, which any party, or the court on its own motion, may raise at

any time. *Vorhees v. Baltazar*, 283 Kan. 389, 397, 153 P.3d 1227 (2007).

In their letter of additional authority, Graham and Martinez contend MERS did not have standing to bring a foreclosure action because MERS is only the holder of the mortgage. Countrywide, as the lender, holds the promissory note.

In its response, MERS attempts to distinguish *Landmark* by claiming it stands for the sole proposition that MERS was not a necessary party following an entry of default judgment in a foreclosure action. MERS claims the underlying facts in this case differ markedly from the facts in *Landmark* and that Graham and Martinez admitted in their pleadings that "MERS acted as an agent of the note owner, Countrywide, and are bound by their admissions." However, "parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel. Nor can parties convey jurisdiction on a court by failing to object to its lack of jurisdiction. [Citation omitted.]" *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, 814, 987 P.2d 1096 (1999).

In *Landmark*, our Supreme Court determined that a nonlender is not a contingently necessary party in a mortgage foreclosure action. 289 Kan. at 542-44. In its analysis, the *Landmark* court provided a detailed discussion of MERS as a "nominee" for the lender and determined the legal status of a nominee "depends on the context of the relationship of the nominee to its principal." 289 Kan. at 539. After examining the relationship between MERS and the lender, the *Landmark* court stated:

> "The relationship that MERS has to [the lender] is more akin to that of a straw man than to a party possessing all the rights given a buyer. A mortgagee and a lender have intertwined rights that defy a clear separation of interests, especially when such a purported separation relies on ambiguous contractual language. The law generally understands that a mortgagee is not distinct from a lender: a mortgagee is '[o]ne to whom property is mortgaged: the mortgage creditor, or lender.' Black's Law Dictionary 1034 (8th ed. 2004). By statute, assignment of the mortgage carries with it the assignment of the debt. K.S.A. 58-2323. Although MERS asserts that, under some situations, the mortgage document purports to give it the same rights as the lender, the document consistently refers only to rights of the lender, including rights to receive notice of litigation, to collect payments, and

to enforce the debt obligation. The document consistently limits MERS to acting 'solely' as the nominee of the lender.

"Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable.

" 'The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. [Citation omitted.] Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. [Citation omitted.] The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust.' *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo. App. 2009)." 289 Kan. at 539-40.

Likewise, in the instant case, this mortgage states that MERS acts "solely as nominee" for Countrywide. There is no mention of MERS in the promissory note, and there is no evidence that Countrywide assigned the note to MERS. Thus, there is no evidence that MERS has suffered any injury caused by Graham and Martinez' failure to make payments on the promissory note. The note does not obligate Graham and Martinez to make payments to MERS. Further, there is no indication that MERS possesses any interest in the promissory note, and given *Landmark*'s "straw man" characterization of MERS's relationship to lenders, 289 Kan. at 539, there is no evidence that MERS received permission to act as an agent for Countrywide.

Having suffered no injury, MERS lacks standing to bring a foreclosure action. Accordingly, the district court did not have jurisdiction to grant MERS's petition to foreclose the mortgage. The summary judgment in favor of MERS is reversed, and the foreclosure action is dismissed.

### SUMMARY JUDGMENT ON THE FRAUD CLAIM

An appellate court's standard of review in summary judgment cases is well established:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The [district] court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Miller v. Westport Ins. Corp.*, 288 Kan. 27, Syl. ¶ 1, 200 P.3d 419 (2009).

The elements required to sustain an action for fraud include: " '[1] an untrue statement of fact, [2] known to be untrue by the party making it, [3] made with the intent to deceive or with reckless disregard for the truth, [4] upon which another party justifiably relies and [5] acts to his or her detriment.' " *Bomhoff v. Nelnet Loan Services, Inc.*, 279 Kan. 415, 422, 109 P.3d 1241 (2005); PIK Civ. 4th 127.40.

Although the existence of fraud is normally a question of fact, when a plaintiff presents no evidence of an essential element of his or her claim, " 'there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.' " *Crooks v. Greene*, 12 Kan. App. 2d 62, 64-65, 736 P.2d 78 (1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 [1986]).

Here, the district court concluded Graham and Martinez simply failed to present evidence to support the essential elements of their fraud claim. Thus, when a plaintiff lacks evidence to establish an essential element of his or her claim, summary judgment is appropriate. See *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131, 955 P.2d 1189 (1998).

In its response to MERS's and Countrywide's motions for summary judgment, Graham and Martinez claimed that McCalla Raymer made false and misleading statements in its October 26, 2005, letter when it stated that they had been preapproved for a loan modification. According to Graham and Martinez, they assumed "the loan modification would go through" once they agreed to lift the stay in their bankruptcy case. However, Graham and Martinez'

assumption is not supported by the evidence and does not show that any statement in McCalla Raymer's October 26 letter was untrue.

The October 26 letter contains two sentences that refute Graham and Martinez' fraud claim. First, after the letter's two conditions, McCalla Raymer stated, "Please be advised that final terms of the loans [*sic*] modification will be determined when the loan is released out of bankruptcy." Consequently, the terms of the loan modification would have had to be determined after the bankruptcy stay was lifted.

Second, and more importantly, Graham and Martinez repeatedly omit a crucial sentence in the October 26 letter: "If your client is interested in a loan modification with our client, please contact our office immediately to discuss further." Neither Brunton, Graham, nor Martinez contacted McCalla Raymer concerning an interest in a loan modification.

Contrary to Graham and Martinez' claim, the October 26 letter clearly requested that Graham and Martinez contact McCalla Raymer to communicate their interest in a loan modification. As evidence of McCalla Raymer's intent, it sent another letter on November 14, 2005, which stated, "Please note that if we do not hear from your office regarding this matter by 11/21/05, we will be forced to close our file." Thus, Graham and Martinez presented no evidence McCalla Raymer intended to deceive them.

Graham and Martinez claim that the consent form allowing McCalla Raymer to communicate directly with them mandated that McCalla Raymer initiate contact with Graham and Martinez about the preapproved loan. However, the consent form merely allowed McCalla Raymer to contact Graham and Martinez directly, it did not require direct contact, nor did it prohibit sending correspondence through Brunton, their attorney.

In their response to the motions for summary judgment, Graham and Martinez claimed their damage was the loss of their home, which, in their opinion, is worth $150,000. Although Graham and Martinez claim on appeal they "voluntarily gave up valuable protections that were in place by virtue of the existence [of] the automatic stay order," the record on appeal indicates MERS did not

file its second foreclosure action until January 18, 2006, more than 1 week after the bankruptcy court involuntarily dismissed Graham and Martinez' second bankruptcy case for failure to resume the plan payments.

Even if McCalla Raymer's statements were untrue and made with the intent to deceive, Graham and Martinez did not suffer any damage from consenting to lift the automatic bankruptcy stay. See *Vondracek v. Mid-State Co-op, Inc.*, 32 Kan. App. 2d 98, 102-03, 79 P.3d 197 (2003).

Therefore, after review of the record on appeal in the light most favorable to Graham and Martinez, there is no genuine issue as to any material fact. Graham and Martinez clearly failed to provide evidence to support the essential elements of their fraud claim. Thus, summary judgment was appropriate. See *Saliba*, 264 Kan. at 131.

### Kansas Consumer Protection Act Claims

Graham and Martinez claim that under the KCPA, whether a person has engaged in a deceptive act or practice is a question of fact and not appropriate for summary judgment. However, summary judgment is appropriate on claims under K.S.A. 50-626 and K.S.A. 50-627 if there is no evidence of deceptive or unconscionable conduct. *Bomhoff*, 279 Kan. 415, Syl. ¶ 4. The same standard of review for summary judgment applies to this issue as noted above. *Miller*, 288 Kan. 27, Syl. ¶ 1.

In their appellate brief, Graham and Martinez specifically allege MERS and Countrywide violated K.S.A. 50-626(b)(2) and (b)(3) of the KCPA. Under K.S.A. 50-626(b)(2) and (b)(3), a supplier shall not engage in deceptive acts or practices, including the willful use of "exaggeration, falsehood, innuendo or ambiguity as to a material fact" in any written or oral representation, the willful failure to state a material fact, or the willful concealment of a material fact. This conduct may constitute a deceptive act regardless of whether it actually misled the consumer. K.S.A. 50-626(b).

Again, Graham and Martinez point to McCalla Raymer's statements in its October 26, 2005, letter conditionally preapproving them for a loan modification. However, as noted above, Graham

and Martinez failed to present any evidence that McCalla Raymer intended to deceive them, willfully failed to state a material fact, or willfully concealed a material fact. Intent is required for a violation of K.S.A. 50-626(b)(2) and (b)(3). See *Crandall v. Grbic*, 36 Kan. App. 2d 179, 196, 138 P.3d 365 (2006).

Here, the district court stated: "The best that can be shown is a miscommunication, not a willful falsehood or ambiguity . . . or a willful failure to state a material fact or the willful concealment of one." Thus, summary judgment is appropriate.

Graham and Martinez also allege MERS and Countrywide violated the KCPA by engaging in unconscionable acts or practices under K.S.A. 50-627(b)(1), (3), (5), and (6). Whether acts are unconscionable under the KCPA is a legal question for the district court, for which appellate review is unlimited. *State ex rel. Kline v. Berry*, 35 Kan. App. 2d 896, 907, 137 P.3d 500 (2006).

While the KCPA has no definition of "unconscionable," the statute provides nonexclusive examples of unconscionable acts. See K.S.A. 50-627. When determining whether certain conduct was unconscionable, the district court is to consider whether a supplier knew or had reason to know any of the following circumstances:

"(1) The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor;

. . . .

"(3) the consumer was unable to receive a material benefit from the subject of the transaction;

. . . .

"(5) the transaction the supplier induced the consumer to enter into was excessively onesided in favor of the supplier; [and]

"(6) the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment." K.S.A. 50-627(b)(1), (3), (5)-(6).

Notably, in their amended counterclaim, their response to the motions for summary judgment, and their appellate brief, Graham and Martinez fail to present any facts to support an allegation that MERS and Countrywide engaged in any unconscionable acts. Instead, Graham and Martinez broadly suggest that "[i]f the District

Court had considered the facts shown by the discovery record," it would have denied MERS's and Countrywide's motions for summary judgment. Issues not briefed are deemed abandoned. See *Cooke v. Gillespie*, 285 Kan. 748, 758, 176 P.3d 144 (2008).

Graham and Martinez simply failed to present any evidence that MERS and Countrywide, through McCalla Raymer's October 26 letter, engaged in any unconscionable acts as described in K.S.A. 50-627(b). Accordingly, the district court did not err in granting MERS's and Countrywide's motions for summary judgment concerning Graham and Martinez' fraud and KCPA claims.

Next, Graham and Martinez claim the equitable doctrine of clean hands bars MERS's motion for summary judgment concerning its foreclosure action. Because we find that the district court did not have jurisdiction to grant summary judgment on MERS's foreclosure action, the question of whether they acted with "clean hands" is not an issue.

The district court's order granting partial summary judgment in favor of MERS's foreclosure action is reversed, and the foreclosure action is dismissed. The order granting summary judgment in favor of MERS and Countrywide on Graham and Martinez' fraud and KCPA claims is affirmed.

Affirmed in part, reversed in part, and dismissed in part.