(280 P.3d 225)
No. 106,415

U.S. BANK, N.A., *Appellee*, v. JAMES W. HOWIE, DECEASED, *et al.*
(GEORGIA L. HOWIE), *Appellants*.

Opinion filed June 8, 2012.

*R. Scott Ryburn*, Anderson & Byrd LLP, of Ottawa, for appellants.

*JoAnn T. Sandifer*, of Husch Blackwell LLP, of St. Louis, Missouri, and *Aaron M. Schuckman*, of Millsap & Singer, LLC, of St. Louis, Missouri, for appellee.

Before GREEN, P.J., MALONE and MCANANY, JJ.

MALONE, J.: Georgia L. Howie appeals the district court's decision granting summary judgment in favor of U.S. Bank, N.A. (U.S. Bank) on U.S. Bank's mortgage foreclosure petition. Georgia claims that U.S. Bank is barred from foreclosing on the mortgage for two reasons. First, Georgia argues that the mortgage debt was

extinguished because U.S. Bank had failed to demand payment on the promissory note, signed solely by her late husband, within the time prescribed under K.S.A. 59-2239(1) after her husband's death. Second, Georgia argues that the promissory note and associated underlying debt were irreparably severed from the mortgage because the promissory note and the mortgage were held by separate entities. We reject each of Georgia's arguments and affirm the district court's judgment in favor of U.S. Bank.

On September 20, 2005, James W. Howie executed a promissory note (Note) to U.S. Bank in the amount of $151,600 plus interest. The Note was signed solely by James. That same day, James and his wife, Georgia Howie, executed a mortgage (Mortgage) granting a security interest in certain real property (Property) located in Ottawa, Kansas, to secure payment of the Note. Under the terms of the Mortgage, the Howies were named as "Borrower," U.S. Bank was named as "Lender," and Mortgage Electronic Registration Systems, Inc. (MERS) was named as the mortgagee "acting solely as a nominee for Lender and Lender's successors and assigns." The Mortgage stated:

"Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this [Mortgage], but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this [Mortgage.]"

James died on February 23, 2008, leaving Georgia as the surviving joint tenant with right of survivorship in the Property. At some point, Georgia stopped making payments on the underlying debt and by May 1, 2009, the Note was in default, a fact which Georgia candidly admits. On October 28, 2009, MERS assigned the Mortgage to U.S. Bank, and on November 10, 2009, U.S. Bank filed a petition to foreclose the mortgage. U.S. Bank later clarified that it was pursuing only its in rem remedy to foreclose the Mortgage against the Property and that it was not seeking a personal judgment against Georgia under the Note.

On June 2, 2010, Georgia filed a motion for summary judgment. She argued that she was not personally liable for the debt because

she never signed the Note and further that her husband's estate was not liable under the Note because U.S. Bank had failed to demand payment within the time prescribed under K.S.A. 59-2239(1) after her husband's death. She also argued that U.S. Bank could not foreclose against the Property under the Mortgage because the Note, held by U.S. Bank, and the Mortgage, initially held by MERS and later assigned to U.S. Bank, had been irreparably severed. U.S. Bank filed a response to Georgia's motion as well as its own cross-motion for summary judgment. U.S. Bank argued that K.S.A. 59-2239(1) was inapplicable because the statute expressly excludes claims made in relation to liens existing at the time of the decedent's death. U.S. Bank also argued that the Note and the Mortgage were never severed because MERS held the Mortgage solely as "nominee" or agent of U.S. Bank.

Following a hearing, the district court denied Georgia's motion for summary judgment in a memorandum decision filed on February 23, 2011. The district court did not address Georgia's argument that U.S. Bank failed to timely demand payment on the Note under K.S.A. 59-2239(1). As to Georgia's argument that the Note and Mortgage were severed, the district court found that even if there were no agency relationship between U.S. Bank and MERS such that the Note and Mortgage were severed, any severance was "cured" by MERS's subsequent assignment of the Mortgage to U.S. Bank, thereby permitting U.S. Bank to foreclose on the Mortgage. On June 21, 2011, the district court filed an order granting summary judgment in favor of U.S. Bank on the mortgage foreclosure petition. Georgia timely appealed the district court's judgment.

The standards for granting summary judgment are well known. When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come

forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011).

### DEMAND FOR PAYMENT UNDER K.S.A. 59-2239(1)

Although the district court did not address the issue in ruling on the summary judgment motions, Georgia renews on appeal her contention that the Mortgage cannot be foreclosed because the underlying debt was extinguished when U.S. Bank failed to demand payment on the Note within the time prescribed under K.S.A. 59-2239(1) after her husband's death. The parties disagree whether the statute is applicable to the facts herein. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).

K.S.A. 59-2239(1) states:

"All demands, including demands of the state, against a decedent's estate . . . shall be forever barred from payment unless the demand is presented within the later of: (a) four months from the date of first publication of notice under K.S.A. 59-2236, and amendments thereto; or (b) if the identity of the creditor is known or reasonably ascertainable, 30 days after actual notice was given, except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control. No creditor shall have any claim against or lien upon the property of a decedent *other than liens existing at the date of the decedent's death*, unless a petition is filed for the probate of the decedent's will pursuant to K.S.A. 59-2220 and amendments thereto or for the administration of the decedent's estate pursuant to K.S.A. 59-2219 and amendments thereto within six months after the death of the decedent and such creditor has exhibited the creditor's demand in the manner and within the time prescribed by this section, except as otherwise provided by this section." (Emphasis added.)

Georgia contends that U.S. Bank cannot foreclose its mortgage on the property because the underlying debt was extinguished when U.S. Bank failed to demand payment on the Note within the time prescribed under K.S.A. 59-2239(1) after her husband's

death. But K.S.A. 59-2239(1) is inapplicable under the present facts. U.S. Bank has expressly stated that it is not seeking a money judgment against either James or Georgia Howie under the Note, but it is only proceeding against the Property. Moreover, the record reflects that the Note was not in default when James died on February 23, 2008, so U.S. Bank had no reason to pursue a claim against James' estate at the time of his death.

As to U.S. Bank's attempt to foreclose the Mortgage, K.S.A. 59-2239(1) provides that no creditor shall have any claim against or lien upon the property of a decedent "other than liens existing at the date of the decedent's death," unless a petition is filed for the probate of the decedent's will or for the administration of the decedent's estate within 6 months after the death of the decedent. The plain language of the statute expressly exempts liens existing at the date of the decedent's death. The clear purpose of this exemption is to relieve secured creditors from additional filing obligations where their claims are already secured by preexisting liens. This purpose would be completely nullified by requiring secured creditors to petition a probate court for enforcement of liens within the time prescribed by K.S.A. 59-2239(1). We agree with U.S. Bank that K.S.A. 59-2239(1) is inapplicable to the facts herein and the provisions of that statute do not bar U.S. Bank from foreclosing its Mortgage against the Property.

## Were the Note and Mortgage Severed?

Georgia next argues that the Mortgage cannot be foreclosed because the Note and associated underlying debt were irreparably severed from the Mortgage where the Note was held by U.S. Bank and the Mortgage initially was held by MERS. She contends that the severance could not be cured by MERS's subsequent assignment of the Mortgage to U.S. Bank prior to U.S. Bank filing the foreclosure petition. U.S Bank argues that, because MERS held the Mortgage solely as "nominee" or agent of U.S. Bank, the Note and Mortgage were never severed and thus U.S. Bank, as present holder of both the Note and the Mortgage, may foreclose on the Mortgage.

The district court did not expressly decide whether MERS held the Mortgage solely as a nominee or agent for U.S. Bank. Instead the district court found that even if there were no agency relationship between U.S. Bank and MERS such that the Note and Mortgage were severed, any severance was "cured" by MERS's subsequent assignment of the Mortgage to U.S. Bank prior to U.S. Bank filing the mortgage foreclosure petition. The parties agree that the facts relevant to this issue are not in dispute. Where there is no factual dispute, appellate review of an order granting summary judgment is de novo. *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 318, 241 P.3d 75 (2010).

Generally, a mortgage is unenforceable when it is not held by the same entity that holds the promissory note. However, an exception exists where there is an agency relationship between the holder of the mortgage and the holder of the promissory note. In *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158 (2009), the Kansas Supreme Court discussed the effect of "splitting" a mortgage from the promissory note:

" 'The practical effect of splitting the deed of trust [or mortgage] from the promissory note is to make it impossible for the holder of the note to foreclose, *unless the holder of the deed of trust is the agent of the holder of the note.* [Citation omitted.] Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. [Citation omitted.] The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust.' [Citation omitted.]" (Emphasis added.) *Landmark*, 289 Kan. at 540.

Because the parties agree that MERS and U.S. Bank are separate entities, the dispositive issue in this case is whether MERS, the initial holder of the Mortgage, was acting as an agent of U.S. Bank, the holder of the Note. If so, then the Mortgage and the Note were never severed and U.S Bank, as the present holder of both, may foreclose on the Mortgage. Whether an agency relationship exists is normally a question for the finder of fact. But here, the only evidence before the district court regarding the existence of an agency relationship between MERS and U.S. Bank was the language of the Mortgage itself, which the parties do not dispute.

Because there is no factual dispute, our review of this issue is unlimited. *Kuxhausen*, 291 Kan. at 318.

Before turning to the question of the existence of an agency relationship between MERS and U.S. Bank, a general overview of the MERS mortgage registration system is in order. In *Jackson v. Mortgage Electronic*, 770 N.W.2d 487, 490 (Minn. 2009), the Minnesota Supreme Court described the MERS mortgage registration system as follows:

"MERS is an electronic registration system that was created in the aftermath of the 1993 savings and loan crisis. MERS does not originate, lend, service, or invest in home mortgage loans. Instead, MERS acts as the nominal mortgagee for the loans owned by its members. The MERS system is designed to allow its members, which include originators, lenders, servicers, and investors, to assign home mortgage loans without having to record each transfer in the local land recording offices where the real estate securing the mortgage is located. . . .

"MERS was designed to improve the efficiency and profitability of the primary and secondary mortgage markets. The primary market in the home mortgage industry largely consists of mortgage loans made to consumers. The loans are evidenced by a promissory note and secured by a security instrument—typically a mortgage deed or deed of trust. The originating lender routinely sells the mortgage loans on the secondary market to investors . . . Once on the secondary market, the loans may be sold several times or bundled into mortgage-backed securities.

"Traditionally, each mortgage loan transfer on the primary and secondary market included an assignment of the security instrument that could be recorded in the local land recording office where the real estate securing the mortgage loan is located. According to MERS, multiple assignments of the security instrument commonly caused confusion, delays, and chain-of-title problems. In an effort to streamline the assignment process, MERS essentially privatized part of the mortgage recording system. Participants in the mortgage industry can subscribe as members on the MERS system. A loan held by a member is registered in the MERS database. Once registered, MERS serves as the mortgagee of record for all loans in its system. More specifically, MERS is the nominal mortgagee for the lender and any successors and assigns. When the security instrument is recorded, the local land records list MERS as the mortgagee.

"The benefit of naming MERS as the nominal mortgagee of record is that when the member transfers an interest in a mortgage loan to another MERS member, MERS privately tracks the assignment within its system but remains the mortgagee of record. According to MERS, this system 'saves lenders time and money, and reduces paperwork, by eliminating the need to prepare and record assignments when trading loans.' "

We now turn to the dispositive issue of whether MERS, the initial holder of the Mortgage, was acting as an agent of U.S. Bank,

the holder of the Note. In Kansas, an agency relationship may be created expressly or by implication. In an express agency, the principal has delegated authority to the agent by words which expressly authorize the agent to perform a delegable act. An implied agency exists where the principal and the agent intend to create a relationship whereby when the agent acts on this authority, others will believe in and rely on the agent's acts. *In re Tax Appeal of Scholastic Book Clubs, Inc.*, 260 Kan. 528, 535, 920 P.2d 947 (1996). Here, the language of the Mortgage evidences an express agency between MERS and U.S. Bank because it explicitly authorizes MERS to act on behalf of U.S. Bank in all situations related to the enforcement of the Mortgage:

"Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this [Mortgage], but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this [Mortgage.]"

Although the Mortgage uses the term "nominee" rather than "agent," this terminology does not alter the character of the relationship between MERS and U.S. Bank. This is especially true given that the legal definitions of "nominee" and "agent" overlap. Black's Law Dictionary defines a nominee as "[a] person designated to act in place of another, [usually] in a very limited way," or "[a] party who holds bare legal title for the benefit of others . . ." and an agent as "[o]ne who is authorized to act for or in the place of another; a representative." Black's Law Dictionary 1149, 72 (9th ed. 2009). Moreover, our Supreme Court has explicitly stated that "[t]he legal status of a nominee . . . depends on the context of the relationship of the nominee *to its principal*," implying that a nominee is a type of agent. (Emphasis added.) *Landmark*, 289 Kan. at 539.

Georgia acknowledges the language contained in the Mortgage, but she relies on caselaw to support the proposition that there was no agency relationship between MERS and U.S. Bank. The primary case on which Georgia relies is *Landmark*. In *Landmark*, the debtor obtained a loan from Landmark National Bank (Landmark),

secured by a mortgage in certain real property. The mortgage was duly recorded in the land records of Ford County, Kansas. About a year later, the debtor took out a second loan from Millenia Mortgage Corp. (Millenia), secured by a mortgage in the same real property. The second mortgage named Millenia as the lender and MERS as the mortgagee acting "solely as nominee for Lender . . . and Lender's successors and assigns." 289 Kan. at 536. The second mortgage was also recorded in Ford County. At some subsequent time, the second mortgage may have been assigned to Sovereign Bank (Sovereign) and Sovereign may have taken physical possession of the associated promissory note, but the assignment of the second mortgage was not recorded.

Landmark later filed a petition to foreclose its mortgage. Landmark named the debtor and Millenia as defendants but did not serve notice of the petition on either MERS or Sovereign. Since neither of the named defendants answered the petition, default judgment was entered against them, and the secured property was sold at a sheriff's sale. Soon after the sheriff's sale, Sovereign filed an answer to the foreclosure petition, claiming an interest in the property as Millenia's successor in interest. Sovereign also filed a motion to set aside the default judgment on the basis that MERS was a contingently necessary party under K.S.A. 60-219(a). Sovereign maintained that because Landmark failed to name MERS as a defendant, Sovereign did not receive notice of the litigation. The district court denied the motion, finding that MERS was not a real party in interest because MERS served only as an agent for Millenia. The district court further found that Sovereign was precluded from asserting its rights after the judgment had been entered because Sovereign had not recorded its interest in the property. 289 Kan. at 532.

On appeal, this court affirmed the district court's judgment in *Landmark National Bank v. Kesler*, 40 Kan. App. 2d 325, 192 P.3d 177 (2008), *aff'd* 289 Kan. 528, 216 P.3d 158 (2009). First, this court agreed with the district court that although the mortgage used the word "nominee," it was clear that MERS was an agent for Millenia. 40 Kan. App. 2d at 327-28. Next, this court found that MERS was not a contingently necessary party under K.S.A.

60-219(a) because MERS did not have a separate interest, apart from its principal's interest in securing the loan, that would be substantially impaired or impeded absent its participation in the foreclosure litigation. 40 Kan. App. 2d at 328. This court specifically noted that MERS did not receive payments on behalf of Millenia or Sovereign and that under the terms of the mortgage, notices of default on superior liens were to go to Millenia, not MERS. 40 Kan. App. 2d at 329-30.

Our Supreme Court granted review and considered the same question—whether the district court abused its discretion in denying the motion to set aside the default judgment on the basis that MERS was a contingently necessary party. 289 Kan. at 533. In the context of its discussion concerning whether MERS had an interest that would be substantially impaired or impeded by its absence from the litigation, the court stated:

> "The relationship that MERS has to Sovereign is more akin to that of a straw man than to a party possessing all the rights given a buyer . . . . Although MERS asserts that, under some situations, the mortgage document purports to give it the same rights as the lender, the document consistently refers only to the rights of the lender, including rights to receive notice of litigation, to collect payments, and to enforce the debt obligation. The document consistently limits MERS to acting 'solely' as the nominee of the lender." 289 Kan. at 539-40.

Georgia relies on this language to support her contention that MERS is acting "solely as a nominee" and not as an agent of U.S. Bank. But it is clear that under this language, our Supreme Court was discussing the scope of MERS's rights and duties as an agent to its principal in the context of determining whether MERS was a contingently necessary party to the foreclosure action. See 289 Kan. at 538-42. Our Supreme Court ultimately determined that the record failed to show that MERS had a tangible and independent interest that was prejudiced by its absence from the initial foreclosure action. 289 Kan. at 542. In this unique procedural posture, *Landmark* does not support Georgia's contention that MERS is not an agent for lenders such as U.S. Bank. Indeed, *Landmark* supports the converse proposition: the fact that MERS has few, if any, rights other than acting on behalf of the lender to secure the

lender's rights where necessary indicates that MERS is an agent of the lender.

Georgia also cites *Mortgage Electronic Registration Systems v. Graham*, 44 Kan. App. 2d 547, 229 P.3d 420 (2010). In *Graham*, the debtor executed a promissory note in favor of Countrywide Home Loans, Inc. (Countrywide) secured by a mortgage held by MERS, "acting solely as nominee for Countrywide." 44 Kan. App. 2d at 549. The debtor defaulted on the note and MERS, not Countrywide, brought a mortgage foreclosure action. The district court granted summary judgment to MERS on the foreclosure petition, and the debtor appealed to this court.

On appeal, after all parties had submitted their briefs, the debtor filed a letter of additional authority pursuant to Supreme Court Rule 6.09(b) arguing that under *Landmark*, MERS did not have a sufficient interest in the outcome of the mortgage foreclosure petition, and thus did not have standing to bring the action, because it was not the holder of the promissory note. 44 Kan. App. 2d at 552-53. MERS responded that *Landmark* narrowly stands for the proposition that MERS is not a necessary party following an entry of default judgment in a mortgage foreclosure action. MERS also asserted that because the debtor had admitted in the pleadings that MERS acted as an agent of Countrywide, MERS had standing to bring the foreclosure action. 44 Kan. App. 2d at 553. This court found that, as in *Landmark*, MERS was acting "solely as nominee" for the lender and held no interest in the promissory note. 44 Kan. App. 2d at 554. Because there was no evidence that MERS had suffered any injury by the debtor's failure to make payments on the promissory note and there was no evidence that MERS had received permission to act as an agent for the lender, this court held that MERS lacked standing to bring a foreclosure action. 44 Kan. App. 2d at 554.

A careful reading of *Graham* suggests that the case is not helpful to Georgia's position. First, the *Graham* court primarily relied on *Landmark* in the context of determining whether MERS had any interest in the promissory note such that MERS suffered an injury due to the debtor's default, and not in the context of determining the exact nature of the relationship between MERS and the lender.

Second, to the extent that the *Graham* court relied on *Landmark*'s "straw man" characterization of the relationship between MERS and its lenders, the court stated that "there is no evidence that MERS received permission to act as an agent for Countrywide"—indicating that if there were such evidence, the result would have been different. 44 Kan. App. 2d at 554.

The *Graham* case was not the end of the parties' litigation on the foreclosure of that particular mortgage. The debtor in *Graham* filed bankruptcy in the United States Bankruptcy Court for the District of Kansas. In the bankruptcy proceeding, the debtor brought an adversary proceeding for determination of the secured status of the claims of Countrywide and MERS. See *In re Martinez*, 444 B.R. 192 (Bankr. D. Kan. 2011). For the first time in the course of the litigation, the debtor made the argument that the mortgage was unenforceable because it had been "split" from the promissory note where MERS held the mortgage and Countrywide held the note—precisely the issue before this court herein. 444 B.R. at 197.

In rejecting the debtor's argument, the *Martinez* court thoroughly examined both *Landmark* and *Graham*. While it found the general principles set forth in *Landmark* to be correct—*i.e.*, that a "split" between a mortgage and a note renders the mortgage unenforceable absent an agency relationship between the holder of the mortgage and the holder of the note—it noted that the *Landmark* court did not specifically address whether an agency relationship existed between MERS and the lender. 444 B.R. at 204. The *Martinez* court also noted that the *Graham* court merely held that there was no evidence in the record that MERS was acting as an agent for Countrywide. 444 B.R. at 204-05. The *Martinez* court noted that the lack of evidence in *Graham* of an agency relationship was hardly surprising given that the standing issue was first raised after the close of appellate briefing and given that the debtor had previously insisted that MERS *was* acting as an agent of Countrywide. 444 B.R. at 205.

Finally, the *Martinez* court held that there was sufficient evidence in the record to establish that MERS was acting as an agent of Countrywide and therefore the mortgage and note were never split such that the mortgage became unenforceable. The *Martinez*

court relied primarily on the language of the mortgage—language virtually identical to the Mortgage clause herein—to find that the debtor was aware of and understood the relationship between MERS and Countrywide. 444 B.R. at 205. The *Martinez* court noted that MERS also provided a copy of its terms and conditions with its lenders as further evidence of the agency relationship. 444 B.R. at 205-06. As the *Martinez* court concluded, based on the legal definitions of the terms it would be difficult to imagine a situation in which a party acting as a "nominee" would not also clearly fit within the definition of an "agent." 444 B.R. at 206 n.51.

We find the reasoning of the *Martinez* court to be persuasive. Georgia attempts to distinguish *Martinez* by arguing there was "considerable evidence" of the agency relationship between MERS and Countrywide presented in *Martinez*, whereas here there was "no evidence" of any agency relationship between MERS and U.S. Bank. While it is true that there was more evidence of the agency relationship in *Martinez*, the bankruptcy court relied primarily on the language of the mortgage—language virtually identical to the Mortgage clause herein—to find that the debtor was aware of and understood the relationship between the lender and the mortgagee. We conclude that the plain language of the Mortgage herein provided sufficient and undisputed evidence that MERS was acting as an agent of U.S. Bank at all relevant times. Because MERS was acting as an agent of U.S. Bank, the Mortgage and the Note were never severed and U.S. Bank, as present holder of both the Note and the Mortgage, was entitled to foreclose on the Mortgage. Although the district court relied on different grounds in deciding the case, it reached the correct result and its decision will be upheld even if it relied upon the wrong ground or assigned erroneous reasons for its decision. *Robbins v. City of Wichita*, 285 Kan. 455, 472, 172 P.3d 1187 (2007).

Affirmed.