(286 P.3d 1150)
No. 106,846

METLIFE HOME LOANS, a Division of METLIFE BANK, N.A., *Appellee*, v. C.T. HANSEN a/k/a CLARENCE G. HANSEN and KELLY L. HANSEN, *Appellants*, WELLSVILLE BANK, and UNITED STATES OF AMERICA, *Appellees*.

Opinion filed September 28, 2012.

*Clarence G. Hansen* and *Kelly L. Hansen*, for appellants pro se.

*Robert D. Kroeker* and *Beverly M. Weber*, of Martin, Leigh, Laws & Fritzlen, P.C., of Kansas City, Missouri, for appellee MetLife Home Loans.

Before GREENE, C.J., PIERRON and ARNOLD-BURGER, JJ.

ARNOLD-BURGER, J.: When a borrower defaults on a promissory note that is secured by a real estate mortgage, the lender may foreclose on the mortgaged property to collect on the note. In this case, MetLife Home Loans, a Division of MetLife Bank, N.A. (MetLife) claims to be the holder of both the promissory note (Note) and the corresponding mortgage (Mortgage) on property owned by C.T. and Kelly Hansen (Hansens). There is no dispute that the Note is in default. Due to the default, MetLife seeks to foreclose on the property to collect on the Note. The sole issue in this appeal is whether the district court was correct to grant summary judgment to MetLife.

The Hansens argue that because the Note and the Mortgage took divergent paths, *i.e.*, the Note was separately endorsed between various lenders, while the Mortgage remained recorded in the name of Mortgage Electronic Registration Systems, Inc. (MERS), there was an irreparable legal separation of the Note and the Mortgage, rendering the Mortgage unenforceable by MetLife. MetLife counters that the path the various assignments took is irrelevant because at the time the action was filed, MetLife held both the Note and the Mortgage. In other words, MetLife contends that even if there was a defect in assignment that split the two interests, that defect was cured when the interests were rejoined under MetLife's common holding.

The district court agreed with MetLife and granted it summary judgment. Because we find that summary judgment was proper, albeit for different reasons than the district court, we affirm.

FACTUAL AND PROCEDURAL HISTORY

*Execution of the promissory note and the mortgage*

On March 4, 2004, Clarence Hanson (C.T.) executed and delivered the Note to Sunflower Mortgage Company (Sunflower), promising to pay Sunflower $168,750 plus interest in monthly installments over a 15-year period. As security for the Note, the Hansens (C.T. and his then-wife Kelly) signed a Mortgage on their Baldwin City home, which was filed with the Douglas County Register of Deeds on March 10, 2004.

The definitions, powers, and obligations of the parties to the Mortgage are important here. The Mortgage names the Hansens as the "Borrower" and Sunflower as the "Lender." It also references the Note signed between C.T. and Sunflower. The Mortgage defines MERS, a separate corporation, as the mortgagee and states that MERS is acting "solely as nominee" for Sunflower and Sunflower's successors and assigns. In the Mortgage, the Hansens specifically and irrevocably mortgaged their home to MERS—solely as nominee for Sunflower and Sunflower's successors and assigns— and to the successors and assigns of MERS. MERS reserved the right to take any action required of the Lender including, but not limited to, releasing and cancelling the Mortgage.

*The Note and the Mortgage came under MetLife's common holding through a series of nonparallel endorsements or assignments.*

Both the Note and the Mortgage eventually came to be held by MetLife through a series of separate endorsements or assignments:
- *The Note:* Sunflower exercised its right of transfer provided for in the Note and endorsed it to Ohio Savings Bank (Ohio Savings) on March 4, 2004—the same day it was signed by C.T. The Note was thereafter twice endorsed (on dates unknown): from Ohio Savings to First Horizon Loan Corporation (First Horizon); and from First Horizon to MetLife.

- *The Mortgage*: The central point of contention in this appeal stems from the fact that during the course of the above endorsements of the Note between the various lenders, the original Mortgage remained recorded in the name of MERS up until MERS assigned it to MetLife, *"solely as nominee for Sunflower Mortgage Co."* (Emphasis added.)

*Defendants challenged MetLife's standing to foreclose.*

C.T. eventually defaulted on the Note, so on February 16, 2010, MetLife filed the foreclosure petition that is the underlying subject matter of this case. In addition to the Hansens, MetLife named Wellsville Bank as a defendant because on August 29, 2008, it had recorded a $70,000 mortgage granted by C.T. on the same Baldwin City property. Wellsville Bank filed a cross-claim for foreclosure because C.T. had also defaulted on its note secured by that mortgage.

The Hansens and Wellsville Bank challenged MetLife's standing to foreclose in their affirmative defenses in their answers to MetLife's petition and in summary judgment pleadings initiated by Wellsville Bank. While their arguments took on many different angles, the gist of their complaint was that ownership of the Note and the Mortgage had irreparably split when the Note was endorsed between the various lenders while the Mortgage remained recorded in MERS's name, as the mortgagee. Consequently, Wellsville Bank and the Hansens claimed that MetLife either wholly lacked an interest in the Hansens' Baldwin City property or any interest MetLife did have was unsecured and, therefore, junior to Wellsville Bank's interest.

MetLife primarily responded that it had standing to foreclose based simply on its holding of both the Note and the Mortgage, regardless of any prior split in the holdings of each; and even if it had to establish the legality of how it came to hold both, it did so.

It should be noted that after filing its foreclosure petition, MetLife assigned both the Note and Mortgage to Fannie Mae and moved the district court to substitute Fannie Mae as the plaintiff as a result. The district court orally granted that motion at the hearing upon finding that the substitution of Fannie Mae as plain-

tiff did not affect any of the summary judgment arguments concerning MetLife's standing to foreclose. Because the issue was challenged below based on MetLife's standing at the time it filed the petition, Fannie Mae is not further mentioned, although it is technically now the plaintiff/appellee.

*The district court held MetLife had standing to foreclose.*

Following a hearing on the parties' competing motions for summary judgment, during which the sole issue argued was MetLife's standing to foreclose, the district court entered judgment in MetLife's favor. In support, the district court reasoned that the Mortgage and Note had indisputably come under MetLife's common control. And even if an agency relationship might have been lacking between the various lenders that held the Note and MERS—which could be interpreted as causing an improper split of the Mortgage and Note—the court found that any such split was "cured" upon the assignments of both instruments to MetLife. Upon the district court's denial of their motion to reconsider, the Hansens filed this pro se appeal. Wellsville Bank did not appeal.

### ANALYSIS

*Standard of review*

The standards for granting summary judgment are well known. When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal, the same rules apply; summary judgment must denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Osterhaus v. Toth,* 291 Kan. 759, 768, 249 P.3d 888 (2011). In addition, to the extent this case involves a jurisdictional question, that being whether MetLife has standing to bring this foreclosure action, our review is unlimited. *Board of Sumner County Comm'rs v. Bremby,* 286 Kan. 745, Syl. ¶ 1, 189 P.3d 494 (2008).

*The elements of a mortgage foreclosure action.*

"The main purpose of a mortgage is to insure the payment of the debt for which [it] stands as security; and foreclosure is allowed when necessary to carry out that objective." *United States v. Loosley,* 551 P.2d 506, 508 (Utah 1976). Accordingly, in order to grant summary judgment in a mortgage foreclosure action, the district court must find undisputed evidence in the record that the defendant signed a promissory note secured by a mortgage, that the plaintiff is the valid holder of the note and the mortgage, and that the defendant has defaulted on the note. See *Cornerstone Homes v. Skinner,* 44 Kan. App. 2d 88, 97-98, 235 P.3d 494 (2010). So in this case, if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact regarding: (1) MetLife's beneficial interest in the Note signed by C.T. Hansen; (2) MetLife's beneficial interest in the Mortgage signed by the Hansens to secure the Note; and (3) a default on the Note by C.T. Hansen, then MetLife is entitled to judgment as a matter of law.

*It is undisputed that MetLife was the assignee of the Note and that C.T. is in default on the Note.*

The first and third conditions, or elements for foreclosure, are met on the undisputed record facts. C.T. signed a promissory note to Sunflower, secured by a real estate mortgage that he and his wife both gave to MERS as nominee of Sunflower. Documents submitted by the Hansens show that the Note was thereafter assigned to Ohio Savings from Sunflower; from Ohio Savings to First Horizon; and from First Horizon to MetLife. We also note that MetLife presented the original Note to the district court. C.T. is in default on the Note. The Hansens summarily denied both the proper assignment of the Note and the subsequent default in their response to MetLife's summary judgment motion. But a party opposing summary judgment may not rely merely on allegations or denials in its own pleadings. Rather a response to a summary judgment motion must set out specific facts supported by affidavits or declarations, showing a genuine issue for trial. K.S.A. 60-256. Because the Hansens failed to present evidence supported by affi-

davits or declarations that sufficiently disputed MetLife's claims regarding MetLife's valid interest in the Note via the endorsements and C.T.'s default on the Note, these facts are deemed admitted. See Supreme Court Rule 141 (2011 Kan. Ct. R. Annot. 232).

*The issue here centers on MetLife's interest in the Mortgage.*

The issue key to this appeal is the evidence to support the second element, *i.e.*, whether the record supports the finding that MetLife is also the undisputable holder of the Mortgage and therefore, summary judgment is proper on the issue of its standing to foreclose on the Mortgage as collateral for the Note. The Hansens confirmed at oral arguments before the district court that this was the primary issue they were raising in their challenge to MetLife's standing.

Before addressing the Hansens' argument and MetLife's response, we pause briefly to discuss MERS's role in mortgage transactions and the legal concept of splitting a promissory note and the mortgage that secures it.

*How MERS works.*

The Kansas Supreme Court has described MERS as a private corporation that administers a national electronic registry that tracks the ownership interests and servicing rights in mortgage loans. MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the mortgagee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes. The lenders can then sell their interests to investors without having to record each transaction in the public records. *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 536, 216 P.3d 158 (2009) (*Landmark*); see also *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011) (providing more in-depth description of MERS's functions in mortgage transactions).

In the absence of this arrangement, each time a lender assigned a promissory note, the lender would have to record the action with the county register of deeds in order to preserve its priority position

over subsequent lenders. See K.S.A. 58-2308. The intent of this arrangement with MERS as mortgagee acting solely as nominee of the lender was to facilitate the purchase and sale of mortgages in the secondary market. See *In re Martinez*, 444 B.R. 192, 196 (Bankr. D. Kan. 2011), *clarified on denial of reconsideration by In re Martinez*, 455 B.R. 755 (Bankr. D. Kan. 2011).

In *Landmark*, our Supreme Court described MERS's role as that of a "straw man," functioning solely as nominee for the lender. 289 Kan. at 539-40. Quoting Black's Law Dictionary's definition of a nominee as one " 'who holds bare legal title for the benefit of others,' " the court pointed out that this definition suggests that a nominee possess few or no legally enforceable rights beyond those of the principal whom the nominee serves. 289 Kan. at 538 (quoting Black's Law Dictionary 1076 [8th ed. 2004]).

*A promissory note and a mortgage may become separated or split, rendering the mortgage unenforceable.*

Also in *Landmark*, our Supreme Court noted that a mortgage may become unenforceable when it is not held by the same entity that holds the promissory note. However, an exception exists where there is an agency relationship between the holder of the mortgage and the holder of the promissory note. 289 Kan. at 540. This concept is one of practicality: In the absence of an agency relationship between the holder of the mortgage and the holder of the note, the entity holding only the note lacks the power to foreclose in the event of a default, and the entity holding only the mortgage will never experience a default because it has no right to payment under the note. *Landmark*, 289 Kan. at 540 (quoting *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 [Mo. App. 2009]).

*Here, the Note and the Mortgage were not split.*

The Hansens argue that because there was no evidence presented that any of the assignees of the Note in this case (Sunflower, Ohio Savings, First Horizon, or MetLife) were MERS members, then there was no evidence of an agency relationship with MERS. They contend that based upon our Supreme Court's holding in *Landmark*, if there was no agency relationship between the holder

of the Note and MERS, then the holding of the Note and the Mortgage by separate entities created a split, and, as a result MetLife had no standing to foreclose the mortgage.

This court recently addressed the concept of the splitting of a promissory note and the mortgage that secures it in *U.S. Bank v. Howie*, 47 Kan. App. 2d 690, 280 P.3d 225 (2012). Unfortunately, the district court did not have the benefit of *Howie* at the time it ruled on the summary judgment motion in this case.

The facts in *Howie* are fairly similar to those in the case now before this court. James Howie executed a promissory note to U.S. Bank. That same day he and his wife, Georgia, executed a mortgage on real property they owned in Ottawa. Under the terms of the mortgage, the Howies were named as the borrower, U.S. Bank as the lender, and MERS was named as the mortgagee " 'acting solely as a nominee for Lender and the Lender's successors and assigns.' " 47 Kan. App. 2d at 691. When the note entered into default following James' death, MERS assigned the mortgage to U.S. Bank, which subsequently filed an action to foreclose the mortgage. Georgia argued that when the note and the mortgage were held by two separate entities (U.S. Bank and MERS) they were irreparably severed and the severance could not be cured by the subsequent assignment of the mortgage from MERS to U.S. Bank prior to the filing of the foreclosure action. 47 Kan. App. 2d at 694. Georgia noted that there was no evidence of any agency relationship between MERS and U.S. Bank. 47 Kan. App. 2d at 702. The district court—like the district court in this case—did not expressly decide whether MERS held the mortgage as an agent of U.S. Bank. Instead, the district court held that even if there was no agency relationship between MERS and U.S. Bank such that the note and the mortgage were severed, any severance was cured by MERS's subsequent assignment of the mortgage to U.S. Bank.

In reviewing the arguments made by Georgia and U.S. Bank, the court in *Howie*, identified the dispositive issue as whether MERS, as the initial holder of the mortgage, was acting as an agent for U.S. Bank. 47 Kan. App. 2d at 696-97. It found, consistent with *Landmark*'s characterization of MERS as a " 'straw man,' " that MERS had few if any rights other than acting on behalf of the

lender to secure the lender's rights where necessary. Accordingly, MERS was an agent of the lender. *Howie*, 47 Kan. App. 2d at 699-700.

The *Howie* panel also considered at length and agreed with the reasoning by the United States Bankruptcy Court for the District of Kansas in *In re Martinez*, 444 B.R. at 192. *Howie*, 47 Kan. App. 2d at 701-02. Simply put, *Martinez* held that where there is sufficient evidence to establish that MERS is acting as an agent of the lender, there is no split between the note and mortgage that renders the mortgage unenforceable. 444 B.R. at 206.

The *Howie* panel also rejected Georgia's challenge to the sufficiency of the evidence to find that MERS was acting as an agent for U.S. Bank for summary judgment purposes. Although *direct* evidence of an agency relationship may have been lacking in *Howie*, the panel held that the plain language of the mortgage provided sufficient and undisputed evidence from which it could be conclusively held that MERS was acting as an agent of U.S. Bank at all relevant times. While that was not the reasoning relied upon by the district court in granting summary judgment, the *Howie* panel held that the district court reached the correct result and affirmed its grant of summary judgment to U.S. Bank.

We find *Howie*'s reasoning persuasive in this case. As in *Howie*, the only evidence regarding the existence of an agency relationship between MERS and MetLife in this case is the language of the Mortgage itself, which the parties do not dispute. Because we are in just as good a position as the district court to review that contractual language, our review is unlimited. See *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 318, 241 P.3d 75 (2010).

But this case is distinguishable from *Howie* in one important aspect: here, MetLife was not the original holder of the note, as was U.S. Bank in *Howie*, but was instead a subsequent assignee of the original lender, Sunflower. Because there was no direct evidence that MetLife maintained an independent agency relationship with MERS—by proving it was a MERS member, for example—the question becomes whether, as in *Howie*, the language of the Mortgage alone conclusively establishes an agency relationship

between MERS, Sunflower, *and Sunflower's assignees*. We believe that it does for the following reasons.

As recognized in the Restatement (Third) of Property: Mortgages, an agency relationship may arise between a holder of the note and the holder of the mortgage

"from the terms of the assignment, from a separate agreement, or from other circumstances. Courts should be vigorous in seeking to find such a relationship since the result is otherwise likely to be a windfall for the mortgagor and the frustration of [the note holder's] expectation of security." Restatement (Third) of Property: Mortgages § 5.4, comment e (1996).

Promissory notes and mortgages are contracts to which the rules of contract construction apply. *Blair Const., Inc. v. McBeth*, 273 Kan. 679, 691, 44 P.3d 1244 (2002). Absent an ambiguity in a contract, a court must give effect to the intent of the parties as expressed within the four corners of the instrument. 273 Kan. at 691.

We find no ambiguity in the Note or the Mortgage in this case. The Mortgage clearly states that the Hansens mortgaged the listed property "to MERS (solely as nominee for Lender *and Lender's successors and assigns*)." (Emphasis added.) This language unambiguously advised the Hansens that the Mortgage would be held by MERS for the benefit of Sunflower and any of Sunflower's successors and assigns. The Mortgage also provided that the Mortgage secures the repayment of the Note and that the Note, together with the Mortgage, could be sold one or more times. Finally, the Mortgage allows the Lender to foreclose on the Mortgage by judicial proceeding. The Note also specifically cross-references the Mortgage. The plain language of both the Note and the Mortgage indicates that the parties' intended to keep them together, intertwined, as part of one transaction.

Our interpretation is also consistent with Kansas mortgage law. Generally, the transfer of an obligation or debt secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise. *Martinez*, 444 B.R. at 202 (citing Restatement [Third] of Property: Mortgages § 5.4[a]). This has long been the common law in Kansas. See *Kurtz v. Sponable*, 6 Kan. *395, *397 (1870) (recognizing that "[u]nder our laws, the mortgage is but

appurtenant to the debt; a mere security; and, under ordinary circumstances, whoever owns the debt, owns the mortgage").

More recent authorities confirm that this common-law concept of the mortgage following the note remains good law. For example, in *Army Nat'l Bank v. Equity Developers, Inc.*, 245 Kan. 3, 17, 774 P.2d 919 (1989), our Supreme Court held: "Our view is that the mortgage follows the note. A perfected claim to the note is equally perfected as to the mortgage." See also *Federal Land Bank of Wichita v. Krug*, 253 Kan. 307, 314, 856 P.2d 111 (1993) (noting that real estate mortgage is a contract which conveys no legal title, but is merely mortgagee's security for mortgagor's debt; and because mortgage is only security, and incident to debt, it follows debt and partakes of its nature and character).

In fact, our legislature directs the converse concept is also true under Kansas law. More specifically, K.S.A. 58-2323, first adopted in 1899, directs that the assignment of any mortgage also carries with it the debt thereby secured. See Reinstatement (Third) of Property: Mortgages § 5.4, comment c.

From all of these authorities, it is clear that Kansas law favors keeping the mortgage and the right of the enforcement of the obligation it secures in the hands of the same person or entity.

To support their claim that MetLife does not hold the Mortgage, and, therefore, an irreparable "split" has occurred, the Hansens rely on the fact that in the assignment document it recorded with the register of deeds, MERS explicitly assigned the Note and the Mortgage to MetLife *"solely as nominee for Sunflower Mortgage Co.,"* not as nominee for Sunflower *and its successors and assigns.* (Emphasis added.) They contend that because MERS did not hold, nor had it ever held the Note, and because Sunflower no longer held the Note and was no longer even a viable business, the assignment failed to transfer any interest in the Mortgage to MetLife. Accordingly, the Note and the Mortgage were split; and once split, like Humpty Dumpty, they can never be put back together again. We disagree for the following reason.

As we have already found, MERS held the Mortgage as nominee or agent for MetLife. As our Supreme Court held in *Landmark*, a nominee possesses few or no legally enforceable rights beyond

those of the principal whom the nominee serves. 289 Kan. at 538. In this case, the principal's rights in the Mortgage were not transferred to MERS; instead MERS only held the Mortgage as a "straw man" subject to the superior rights of the principal—in this case the lender, Sunflower, *and* its successors and assigns. In other words, the beneficial interest in the Mortgage and Note remained vested in Sunflower and its successors and assigns by the clear language of both the Note and the Mortgage. See *MERS v. Saunders*, 2 A.3d 289, 295 (Me. 2010) (holding that MERS's sole right as nominee was to record mortgage, with all beneficial rights in mortgage and note remaining with lender and its successors and assigns); *In re Corley*, 447 B.R. 375 (Bankr. S.D. Ga. 2011) (holding under similar facts and contract language that by language of note and mortgage, beneficial interest remained with lender and its successors and assigns).

Accordingly, MetLife, as a downstream assignee of the Note, also retained a beneficial interest in the Mortgage. So even if the language of MERS's assignment of the Mortgage to MetLife was somehow faulty, the result would be the same as far as MetLife's standing to foreclose is concerned. This is because MetLife did not need that assignment in order to vest it with a beneficial interest in the Mortgage. As a valid holder of the Note, it already had such an interest sufficient to give it standing to initiate a foreclosure action. See *Army Nat'l Bank*, 245 Kan. at 16 (quoting recognition in *Middlekauff v. Bell*, 111 Kan. 206, 207, 207 P. 184 [1922] that " '[a]n assignment of a mortgage is merely a formal transfer of title to the instrument . . . . [that the debt owner] did not need the assignment in order to invest her with ownership of the mortgage [because the debt owner] acquired full title by purchase of the note which it secured' "). The assignment of the Mortgage was merely recorded notice of a formal transfer of the title to the instrument as required by recording statutes, which are primarily designed to protect the mortgagee against other creditors of the mortgagor for lien-priority purposes, not to establish the rights of the mortgagee vis—vis the mortgagor. See *Army Nat'l Bank*, 245 Kan. 3, Syl. ¶ 6.

Other jurisdictions have recognized that because the mortgage follows the note, formal assignment of the mortgage is not necessary to secure the note holder's rights in the mortgage, albeit in different circumstances. See *Second National Bank of New Haven v. Dyer*, 121 Conn. 263, 269, 184 A. 386 (1936) (finding that "as between the indebtedness and the mortgage securing it, the debt is the principal thing and the security incidental," so "an assignment of the debt carries with it the right and benefit of the security," even if the security it is not assigned along with the debt); *Johns, et ux., v. Gillian, et al.*, 134 Fla. 575, 582, 184 So. 140 (1938) (finding that even if there had been no assignment of mortgage, purchaser of debt would be entitled to foreclose on mortgage); *Ogilvie v. First Nat. Bank in Enid*, 179 Okla. 111, 64 P.2d 875, 877 (1937) (pointing out that "[t]he mortgage securing a note is merely incident and accessory to the note, partakes of its negotiability so that the indorsement and delivery of the note secured by the mortgage carries the mortgage with it without formal assignment thereof.").

Therefore, because the record conclusively establishes that at all times MetLife held a beneficial interest in both the Note and the Mortgage executed by the Hansens and C.T. was in default on the Note, MetLife was entitled to summary judgment on its mortgage foreclosure action as a matter of law.

*Hansens' remaining claims*

In addition to the appropriateness of the district court's granting of summary judgment, the Hansens raise several other issues.

First, they ask this court to award them damages against MetLife for fraud and impose sanctions against, or otherwise penalize, MetLife and its counsel for statements made to support their summary judgment pleadings. This court does not perform such functions for the first time on appeal, so we will decline the invitation.

Next, they argue that Sunflower never properly perfected its lien because, by the time the Mortgage was recorded on March 10, 2004, Sunflower had lost any interest in the Note based on its endorsement to Ohio Savings on March 4, 2004. The Hansens contend as a result the Mortgage became a " 'Wild Deed' " under

the Uniform Commercial Code, leaving any interest that MetLife held based on the Mortgage null and unsecured and rendering Wellsville Bank's lien superior.

Whether the lien was properly perfected for purposes of lien priorities is not relevant here. As the district court explained at the hearing, perfection through recording is a notice requirement only; it does not affect the validity of an assignment. See, *e.g.*, Restatement (Third) of Property: Mortgages § 5.4, comment b. Moreover, any right to challenge the propriety of perfection of the lien belonged to Wellsville Bank, not the Hansens.

Accordingly, we affirm the decision of the district court.