NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2014-185


JILLIAN COHEN BERGERON

v.

NEW YORK COMMUNITY BANK

Argued: October 15, 2014
Opinion Issued: July 24, 2015


Coughlin, Rainboth, Murphy & Lown, P.A., of Portsmouth (Kenneth D. Murphy on the brief and orally), for the plaintiff.


Doonan, Graves & Longoria, LLC, of Beverly, Massachusetts (Reneau J. Longoria and Michael P. Marsille on the brief, and Ms. Longoria orally), for the defendant.


New Hampshire Legal Assistance (Dennis B. Labbe and Stephanie A. Bray on the brief, and Ms. Bray orally), as amicus curiae.

HICKS, J. The plaintiff, Jillian Cohen Bergeron, appeals an order of the Superior Court (Delker, J.) that: (1) lifted a preliminary injunction on the

foreclosure sale of her home by the defendant, New York Community Bank; and (2) dismissed her case. We affirm.

The trial court found, or the record supports, the following facts. On October 25, 2006, the plaintiff executed a promissory note (Note), in the principal amount of $176,250, in favor of Drew Mortgage Associates, Inc. (DMA). She also executed a mortgage (Mortgage) of even date securing the debt evidenced by the Note as well as the performance of her obligations under the Mortgage. The Mortgage identifies DMA as the lender, the plaintiff as the mortgagor, and Mortgage Electronic Registration Systems, Inc. (MERS) as the mortgagee. More specifically, the Mortgage states: "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.**" The Mortgage also provides that, for the purposes of securing the plaintiff's obligations under the Note and Mortgage, she

> does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS with mortgage covenants, and with power of sale, the [mortgaged property].
>
> . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the [mortgaged property] . . . .

At some later date, MERS assigned the Mortgage to the defendant. The Note was also apparently transferred a number of times, because an allonge with a number of endorsements appears in the record.[*]

According to the allegations in the plaintiff's pleadings, she was notified on or about March 19, 2013, of the defendant's intent to conduct a foreclosure sale on her home — the mortgaged property under the Mortgage. See RSA 479:25 (2013). On or about April 15, 2013, she filed a verified petition to enjoin the foreclosure sale and for an ex parte restraining order. She admitted falling behind on her payments, but challenged the defendant's authority to foreclose because "[i]t appears that at the very least, [the defendant] does not own the note."

---

[*] By affidavit submitted to the trial court, the defendant's senior vice president averred that the defendant was the current owner of the Note as well as the Mortgage, having purchased both from the FDIC. The trial court made no finding as to whether the defendant held the Note.

The plaintiff filed an amended verified petition approximately two months later, again alleging that the defendant "has not met its burden of proving that it is the genuine holder of [her] note." She sought an order temporarily restraining the defendant from holding the foreclosure sale and also sought preliminary and permanent injunctions halting further action toward foreclosure "until [the defendant] gives reasonable consideration of, and response to, [the plaintiff's] loan modification application, and provides proof of its entitlement to enforce the note and its standing to conduct the foreclosure sale."

The trial court issued the requested ex parte temporary restraining order on April 15, 2013, and the requested preliminary injunction on June 20, 2013. The court ruled that "[t]he plaintiff is permitted to pursue her application for a loan modification [and] . . . [t]he defendant is required to consider the plaintiff's application in good faith."

Following denial of the plaintiff's loan modification application, the defendant requested that the court lift the injunction and allow the foreclosure sale to proceed. The court did so, ruling, in relevant part, that the defendant "has the authority to foreclose whether it actually holds the note or is merely acting as an agent for the entity which holds the note."

On appeal, the plaintiff argues that the trial court erred in: (1) ruling that the entity foreclosing a mortgage need not hold both the mortgage and the note; (2) finding that the plaintiff clearly intended that the Note and Mortgage be held by separate entities; and (3) failing to make the necessary finding that the defendant was entitled to enforce the Note. These specific arguments, however, are largely subsumed within the plaintiff's more general contention that because "the mortgage and note are not severable," a mortgagee must be entitled to enforce the promissory note in order to conduct a foreclosure sale pursuant to RSA chapter 479.

"In conducting our review, we accord deference to the trial court's findings of historical fact, where those findings are supported by evidence in the record." Chase v. Ameriquest Mortgage Co., 155 N.H. 19, 21 (2007). "We review the trial court's application of the law to the facts de novo." Ettinger v. Pomeroy Ltd. P'ship, 166 N.H. 447, 450 (2014) (quotation omitted). The narrow issue before us is whether the defendant has authority to foreclose.

The concept that the note and mortgage are not severable has deep roots in our case law. We long ago opined, for instance, "that the interest of the mortgagee passes in all cases with the debt, and that it is not within the statute of frauds, because it is a mere incident to the debt, has no value independent of the debt, and cannot be separated from the debt." Southerin v. Mendum, 5 N.H. 420, 432 (1831). Similarly, we stated that "an assignment of

3

the mortgage, without an assignment of the debt, passes nothing." Smith v. Moore, 11 N.H. 55, 62 (1840).

Here, the Mortgage states that it secures to Lender — identified as DMA — the repayment of the debt evidenced by the Note, but designates MERS as the mortgagee. The plaintiff contends that this arrangement does not separate the note and mortgage at their inception and, accordingly, challenges the trial court's finding that she clearly intended that the Note and Mortgage be held by separate entities. She argues that at the time of closing, "MERS was acting for [DMA] and therefore not as a separate entity." More specifically, she asserts that because MERS held the Mortgage in "only a representative capacity[,] [a]ll the powers and rights regarding the note and mortgage remained with [DMA]."

We will assume, without deciding, that the plaintiff is correct that the nominee arrangement did not split the note and mortgage at the time of closing and, therefore, we need not address her intent as it relates to each party's status at that time. Indeed, it appears that her real challenge is not to the trial court's finding of her intent with respect to the holding of the Note and Mortgage by separate entities at closing, but with respect to the later transfers of those instruments. Thus, the plaintiff asserts:

> At the time the mortgage is signed MERS holds the security interest only on behalf of the "lender." As of that time, the lender was also the holder of the note. It is improper to infer from those facts [that] the borrower "clearly" intended MERS's assignment of the mortgage at some future unknown date to a third party such as the Defendant here. There is no evidence that the Plaintiff intended or agreed that two distinct entities would hold the note and mortgage.

The plaintiff's argument rests upon the premise that the issue of her intent presents a question of fact, and that the trial court erred when it made its determination based "only on the language in the mortgage" and "without an evidentiary hearing." We disagree.

Whether the Mortgage is considered a deed or a contract, the parties' intent with respect thereto is determined by its language unless there is ambiguity. See Dumont v. Town of Wolfeboro, 137 N.H. 1, 5 (1993) (noting that "[c]lear and unambiguous terms of a deed control how we construe the parties' intent"); State v. Collyns, 166 N.H. 514, 519 (2014) (noting that "[a]bsent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the contract" (quotation omitted)). In addition, the interpretation of either a deed or a contract is a question of law, which we review de novo. See Ettinger, 166 N.H. at 450; Collyns, 166 N.H. at 519.

Here, the Mortgage is unambiguous: it conveys the mortgaged property to MERS "solely as nominee for Lender and Lender's successors and assigns" and conveys to MERS "only legal title to the interests granted by [the plaintiff]" in the Mortgage. It clearly indicates that the conveyance was to MERS "and to the successors and assigns of MERS" as "nominee for Lender and Lender's successors and assigns." The clear and unambiguous language of the Mortgage gave the plaintiff notice that both the original Lender (DMA) and MERS could assign their interests. By executing the Mortgage, the plaintiff expressed her intent that the Mortgage could be assigned "at some future unknown date to a third party."

MERS assigned its interest in the Mortgage to the defendant. There is no assertion that the assignment was in any way invalid. Nor does the plaintiff contend that there was any limit to DMA's ability to assign its interest. Because an "assignee's rights are the same as those of the assignor at the time of the assignment," Stateline Steel Erectors v. Shields, 150 N.H. 332, 337 (2003), and the validity of the assignment of the Mortgage to the defendant is not disputed, the terms of the Mortgage control the defendant's right to foreclose. See Citimortgage, Inc. v. Barabas, 975 N.E.2d 805, 813 (Ind. 2012) ("Neither party disputes the validity of the . . . assignment from MERS to [the current mortgage holder]. [The mortgage holder's] interest is thus dependent upon MERS's interest, which arises from the original mortgage contract.").

The plaintiff next argues that "New Hampshire law does not provide authority to a nominee 'mortgagee' such as MERS with no interest in the debt to complete the statutory power of sale as authorized in RSA [chapter] 479. New Hampshire law requires the foreclosing entity to be the owner of the indebtedness." The trial court found that the Mortgage "gave MERS, as the agent of the lender, the authority to exercise the power of sale upon a default." The court then implicitly found it unnecessary to determine whether the defendant held the Note because it concluded that the defendant would also have the authority to foreclose if it did so "as an agent for the entity which holds the note."

We have never addressed whether a foreclosure under a power of sale may be instituted by an agent of the entity holding the right to foreclose. RSA 479:25 itself merely states, in part, that "the mortgagee or his assignee may, upon breach of the condition, give such notices and do such acts as are authorized or required by the power." RSA 479:25; cf. RSA 21:17 (2012) (providing, for purposes of statutory construction, that "[t]he word . . . 'mortgagee' may include any person claiming under such party or having his right"). We have, however, upheld foreclosure by the mode of entry and publication, see RSA 479:19, II (2013), when entry upon the mortgaged premises was made by an agent of the mortgagee. Largey v. Taylor, 75 N.H. 211, 213 (1909) (concluding that "the possession acquired by the mortgagee by the entry of her agent continued until there was an entry in opposition"). We

see no reason why foreclosure by sale under the power pursuant to RSA 479:25 may not similarly be instituted by the agent of one entitled to foreclose in that manner.  Accordingly, even assuming, without deciding, that the plaintiff is correct that "the foreclosure statutes . . . seem to assume that [the] mortgagee is the creditor" — in other words, the holder of the promissory note — we conclude that an agent of the noteholder may properly institute foreclosure proceedings under RSA 479:25.  We note that courts in other jurisdictions have reached a similar conclusion and have held that an agent acting for the noteholder can foreclose a mortgage.  Bucci v. Lehman Brothers Bank, FSB, 68 A.3d 1069, 1089 (R.I. 2013); MetLife Home Loans v. Hansen, 286 P.3d 1150, 1155 (Kan. Ct. App. 2012); see also Restatement (Third) of Property: Mortgages § 5.4 comment e at 385 (1997) (stating that if the mortgage holder has authority from the noteholder to enforce the mortgage on the noteholder's behalf, the "enforcement of the mortgage . . . is proper").

When it lifted the injunction on the theory that the defendant "has the authority to foreclose whether it actually holds the note or is merely acting as an agent for the entity which holds the note," the trial court found it unnecessary to determine whether the Note had been validly assigned to the defendant.  Accordingly, the court must have implicitly found that the defendant was an agent of the noteholder.  See In the Matter of Aube & Aube, 158 N.H. 459, 466 (2009) (noting that "[w]e must assume that the trial court made subsidiary findings necessary to support its general ruling" (quotation omitted)).  Thus, we now consider whether that implicit finding is sustainable. Given our conclusion above that an agent may foreclose on behalf of the noteholder, if the agency finding is sustainable, we need not address the plaintiff's argument that the trial court "erred in not granting a hearing and making factual findings as to whether [the defendant] properly held the note."

"[T]he existence of an agency relationship is a question of fact."  Bouffard v. State Farm Fire & Cas. Co., 162 N.H. 305, 311 (2011).  "We will not disturb the trial court's findings unless they are unsupported by evidence or are erroneous as a matter of law.  The trial court's findings are supported by the evidence if a reasonable person could have reached the same decision based upon the evidence before it."  Id. (citation omitted).

The only evidence of an agency relationship appearing in the record before us is the Mortgage itself.  There is no other independent evidence of an agency relationship between the defendant and the current holder of the Note. Cf. Metlife, 286 P.3d at 1156 (noting lack of direct evidence that assignee of original lender "maintained an independent agency relationship with MERS"); Bouffard, 162 N.H. at 311 (reciting elements necessary to establish an agency relationship).  Accordingly, "the question becomes whether . . . the language of the Mortgage alone conclusively establishes an agency relationship between" the defendant, as assignee of MERS, and any downstream assignee of DMA

6

that held the Note at the commencement of foreclosure.  Metlife, 286 P.3d. at 1156-57.  We believe that it does.  See id. at 1157.

The provisions of the Mortgage demonstrate the existence of an agency relationship between DMA (the lender) and MERS.  See Restatement (Third) of Property: Mortgages, supra § 5.4 comment e at 385-86 (stating that an agency relationship may arise between the holder of the note and the holder of the mortgage "from the terms of the assignment, from a separate agreement, or from other circumstances").  The Mortgage states that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."  Although the Mortgage does not specifically define the term "nominee," Black's Law Dictionary defines "nominee" as "[a] person designated to act in place of another, usu[ally] in a very limited way[;] . . . [a] party who holds bare legal title for the benefit of others."  Black's Law Dictionary 1211 (10th ed. 2014).  Courts in other jurisdictions have characterized the nominee relationship between MERS and the lender for which it is a nominee as one of principal (lender) and agent (MERS).  Barabas, 975 N.E.2d at 813-14 (stating that the dictionary definitions of "nominee" "are consistent with an agency relationship"); Bucci, 68 A.3d at 1082 ("A nominee relationship is akin to that of a principal and agent.").  The Mortgage also expressly grants MERS (solely as nominee for the lender and its successors and assigns) power of sale and "the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the [mortgaged property]."  The agreement plainly authorizes MERS to act on the Lender's behalf, albeit in a limited way, thus evidencing the existence of an agency relationship.  See Barabas, 975 N.E.2d at 814 ("Taken together, MERS's rights under the terms of the . . . mortgage and MERS's own rules indicate that the parties intended to designate MERS as an agent of the lender."); In re Tucker, 441 B.R. 638, 645 (Bankr. W.D. Mo. 2010) (stating that the deed of trust, which granted MERS rights "including but not limited to, the right to foreclose and sell the Property" is "more than sufficient to create an agency relationship between MERS and the Lender and its successors . . .  regardless what term they used to describe that relationship" (quotation omitted)).  In addition, the Note indicates that it is secured by "a Mortgage . . . [or other security instrument] dated the same date as this Note."  "The plain language of both the Note and the Mortgage indicates that the parties[] intended to keep them together, intertwined, as part of one transaction," Metlife, 286 P.3d at 1157, no matter how many times either or both of them were assigned.

Because the Mortgage evidences an agency relationship between the lender (DMA) and the mortgagee (MERS), and the Mortgage contemplates that both DMA and MERS could assign their interests, and the plaintiff does not challenge the validity of the assignment of either the Note or the Mortgage, we conclude that the defendant has the authority, as agent of the noteholder, to exercise the power of sale.  Therefore, we hold that the trial court did not err in lifting the injunction and dismissing the action.  We need not address whether

the defendant could foreclose if the agency relationship was irregular or legitimately challenged by the plaintiff.  We also need not decide whether, absent an agency relationship between the noteholder and the mortgage holder, a party who holds only the mortgage has the authority to foreclose.

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.