NOT DESIGNATED FOR PUBLICATION

No. 115,402

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DEUTSCHE BANK NATIONAL TRUST COMPANY,
*Appellee*,

v.

OLA L. DRAKE and LIONEL DRAKE,
*Appellants*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; REBECCA W. CROTTY, judge. Opinion filed October 20, 2017. Affirmed.

*Ola L. Drake* and *Lionel Drake*, appellants pro se.

*Jennifer A. Donnelli* and *Tracy R. Hancock*, of Bryan Cave LLP, of Kansas City, Missouri, for appellee.

Before ARNOLD-BURGER, C.J., BUSER and POWELL, JJ.

BUSER, J.:  This is an appeal of a mortgage foreclosure. Lionel and Ola Drake were found to be in default on their mortgage held by Deutsche Bank National Trust Company (Deutsche Bank) after a bench trial in the district court. Deutsche Bank was then allowed to proceed with foreclosure. The Drakes appeal this adverse judgment and raise numerous issues for our consideration. Having carefully considered the record on appeal and the parties' briefs, we conclude the district court did not err in granting Deutsche Bank's foreclosure on the property. Accordingly, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2007, the Drakes signed, executed, and delivered a promissory note in the amount of $54,400, with interest, payable to Novastar Mortgage, Inc. (Novastar). That same day, the Drakes executed a mortgage securing repayment of the note. The mortgage was recorded on May 4, 2007, in the Shawnee County Office of the Register of Deeds. It was secured by real estate located at 2833 S.E. Indiana Ave., Topeka, Kansas.

Saxon Mortgage Services (Saxon) serviced the Drakes' loan until 2009 when Ocwen Loan Servicing, LLC (Ocwen) became the loan servicer, a task it continued to perform as of the time of trial. Deutsche Bank was the valid holder of the loan documents with the right to enforce them.

The Drakes' loan payment due on November 1, 2007, was not submitted until December 11, 2007. In the ensuing months, loan payments were received late and those payments were typically applied to the prior month's outstanding obligation. The Drakes' last accepted loan payment was received on June 10, 2008, and was applied to the April 1, 2008, monthly obligation. The May 1, 2008, loan payment remained due and owing.

On May 13, 2008, Saxon offered the Drakes an online repayment plan. In order to accept and implement the repayment plan, the Drakes were required to sign and return the plan documents and submit an initial payment. The Drakes failed to satisfy the conditions of the repayment plan, and on June 4, 2008, Saxon informed them the repayment plan had been cancelled.

A notice of default dated June 3, 2008, was mailed to the Drakes via certified mail. The notice stated the Drakes were in default in the amount of $2,327.28. The Drakes failed to cure the default.

2

The Drakes sent a payment in the amount of $675.23 on June 12, 2008. They were then advised the total amount due on their loan obligation was $1,665.47. The Drakes were sent a second notice of default dated June 18, 2008, which stated they were in default in the amount of $1,690.96. The second notice also demanded payment of the outstanding arrearage plus any regular payment and late fees within 30 days.

The Drakes complied and submitted a financial package for loss mitigation consideration that was received by Saxon on July 24, 2008. Although the Drakes were approved for a loan modification on October 30, 2008, they failed to submit the required documents.

As part of this litigation, the Drakes claimed the loan documents were modified based on a letter dated April 10, 2008, that granted them a "'Mortgage Modification Forbearance.'" The Drakes also asserted they received a letter from Saxon dated August 18, 2008, that rejected payment under the terms of the alleged forbearance agreement. At trial, the Drakes offered copies of the purported letters but failed to offer either original document in evidence or provide other evidence proving the authenticity of the letters or their contents. As of December 14, 2015, the total amount due and owing Deutsche Bank under terms of the loan was $120,236.81.

A bench trial was held on December 14, 2015. Two witnesses presented testimony: Gina Feezer, a loan analyst for Ocwen, and Lionel. At the conclusion of the proceedings, the district court found that Lionel's testimony in which he claimed he was excused from loan payments was not credible. With regard to the two letters the Drakes claimed they received from Saxon, the district court found the letters were inconsistent with Saxon's policies and not in compliance with their trust documents. The district court found that other than copies of the purported letters, the Drakes offered no documentation supporting their claims, and no witness testified in support of the authenticity of those letters. The district court found Deutsche Bank possessed the original loan documents

3

which the Drakes admitted they executed. Finally, the district court found the Drakes were in default. As a result, Deutsche Bank was entitled to foreclose on the property.

The Drakes timely appeal.

## INTRODUCTION

On appeal, the Drakes raise numerous issues, including that they were denied due process of law when: (1) the district court made false public statements about the case and the Lender Processing Services (LPS) agreement; (2) the foreclosure judgment was based on bias, passion, and prejudice; (3) the district court denied an agency relationship between Deutsche Bank and LPS; (4) the district court allowed Deutsche Bank's "false bank records and criminal mass forgeries"; (5) the district court did not let the Drakes sue Deutsche Bank for wrongful foreclosure; (6) the district court denied the Drakes an evidentiary hearing to challenge certain records; (7) the district court did not let the Drakes videotape Lionel's deposition; and (8) the district judge did not recuse herself. Finally, the Drakes claimed that Deutsche Bank did not have standing "because the mortgage documents were assigned using crime."

In response to the Drakes' brief, Deutsche Bank asserted it "does not agree with the Drakes' formulation of the issues on appeal." Instead, the bank identified four issues on appeal. Upon our review, we have consolidated the Drakes' appellate issues under six separate headings which we will individually discuss later.

## THE DRAKES' NONCOMPLIANCE WITH RULES OF APPELLATE PROCEDURE

Preliminarily, we must observe that the Drakes' appellant brief is in substantial noncompliance with our Rules of Appellate Procedure. First, Supreme Court Rule 6.02(a)(4) (2017 Kan. Ct. R. Annot. 35) requires that an appellant's brief must contain a

4

"concise but complete statement, *without argument*, of the facts that are material to determining the issues to be decided in the appeal." (Emphasis added.) A brief review of the Drakes' factual statement shows few record facts but numerous argumentative phrases and assertions, e.g., "This trial judge has full knowledge, these mortgage documents were assigned using crime," and "[t]o further make sure that there would never be a fair trial or due process, . . . this trial judge issued an illegal, hate filled order from the bench." In short, the Drake's factual statement is not only incomplete but it is replete with impermissible argumentation. This factual statement does not comply with Supreme Court Rule 6.02(a)(4).

Second, Supreme Court Rule 6.02(a)(5) requires that an appellant's brief contain "[t]he arguments and *authorities* relied on." (Emphasis added.) The arguments section of appellants' brief consists of 28 pages, yet the Drakes have cited only four Kansas cases in support of their disparate nine arguments made in those 28 pages. In fact, in four of the Drakes' issues, the only legal citation mentioned is to the identical Kansas case which the Drakes claim is the appropriate standard of appellate review for all four issues. Other than that one citation, there is no legal authority cited by the Drakes in support of their legal arguments related to the four issues. We find the lack of legal authority in support of the Drakes' arguments in their appellants' brief to violate Supreme Court Rule 6.02(a)(5).

The Drakes' failure to follow our appellate rules is consequential. It is well settled that "[o]n appeal, error below is never presumed and the burden is on the appellant to make it affirmatively appear." *First Nat'l Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, Syl. ¶ 8, 647 P.2d 1268 (1982). "Therefore, an argument that is not supported with pertinent authority is deemed waived and abandoned. [Citations omitted.]" *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

5

Considered in its totality, the Drakes' failure to comply with our appellate rules has resulted in the waiver or abandonment of their appellate arguments. This procedural failure is fatal to the Drakes' appeal. Nevertheless, despite the procedural bar which frustrates our review, we will rule on the merits of the appeal.

ADMISSIBILITY OF EVIDENCE REGARDING THE LENDER PROCESSING SERVICES CASE

The Drakes complain that during trial the district court erred when it declined to admit in evidence a journal entry memorializing a consent judgment from a separate case involving the State of Kansas and LPS. According to the Drakes, the document and evidence regarding the LPS investigation was relevant because the mortgage assignment in this case was "false" and evidence from this unrelated litigation should have been admitted in evidence. The Drakes conclude that the district court's ruling was to "deceive the public about this case, and to make sure that there would never be a fair trial." In response, Deutsche Bank contends the Drakes and LPS were not parties or participants to the consent judgment and, therefore, the document was irrelevant and appropriately excluded from evidence.

Prior to trial, the district court denied the Drakes' request for an evidentiary hearing to produce documents that LPS was responsible for falsifying mortgage assignment documents in this case. Deutsche Bank had filed discovery responses disavowing any knowledge of loan documents in this case that related to LPS. In particular, the district court reviewed the consent judgment filed in the unrelated case which the Drakes sought to use as evidence in this case and concluded

> "from the Court's review of this document, [Deutsche Bank] is never mentioned at all. Nor is there any reference to the existence of any agency relationship between [Deutsche Bank] and LPS in the Journal Entry. The Court concludes that the [Drakes] have demonstrated no evidentiary basis to support their contention that [Deutsche Bank] acted improperly when it denied that any such relationship exists."

6

The district court noted, however, that discovery remained open and the Drakes could still obtain information from LPS by subpoena.

Our standard of review is well settled. First, a court must determine whether the evidence is relevant. Generally speaking, all relevant evidence is admissible. K.S.A. 60-407(f). K.S.A. 60-401(b) defines relevant evidence as evidence having "'any tendency in reason to prove any material fact.' [Citation omitted.]" *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015). This definition encompasses two elements:  a materiality element and a probative element.

Evidence is material when the fact it supports is in dispute or in issue in the case. *In re Acquisition of Property by Eminent Domain*, 299 Kan. 37, 44, 320 P.3d 955 (2014). The appellate standard of review for materiality is de novo. *Page*, 303 Kan. at 550. Evidence is probative if it has any tendency to prove any material fact. *State v. Dupree*, 304 Kan. 43, 64, 371 P.3d 862 (2016). An appellate court reviews the district court's assessment of the probative value of evidence under an abuse of discretion standard. *Page*, 303 Kan. at 550-51.

Here, there is substantial competent evidence to find that the consent judgment between the State and LPS did not support or dispute a material fact regarding the mortgage foreclosure litigation between Deutsche Bank and the Drakes. Because this evidence was not relevant to the mortgage foreclosure, the Drakes have failed to show error in the district court's exclusion of it.

SUBSTANTIAL COMPETENT EVIDENCE OF MORTGAGE DEFAULT

The Drakes assert that due to the "LPS plea agreement that allows 'millions' of the Deutsche Bank criminal mass forgeries to be used against these customers and the people

7

of Kansas" the foreclosure judgment entered in this case was based on false bank records. Deutsche Bank responds that there was sufficient evidence produced at trial to prove the three elements of a foreclosure in Kansas.

When reviewing a mixed question of fact and law, an appellate court applies a bifurcated review standard. The court's factual findings are generally reviewed under the substantial competent evidence standard. Its conclusions of law based on those facts are subject to unlimited review. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

The purpose of a mortgage is to "'insure the payment of the debt'" for which it stands as a security. *MetLife Home Loans v. Hansen*, 48 Kan. App. 2d 213, 218, 286 P.3d 1150 (2012) (quoting *United States v. Loosley*, 551 P.2d 506, 508 [Utah 1976]). Foreclosure is then permitted when it is necessary to insure the payment of that debt. *Hansen*, 48 Kan. App. 2d at 218. There are three elements required for a lawful mortgage foreclosure: (1) a promissory note held by the plaintiff and signed by the defendant that reflects the promise to repay a debt; (2) a record of the mortgage that provides for security in the designated property and insures repayment of the note; and (3) proof that the defendant has defaulted on the note. 48 Kan. App. 2d at 218.

Upon our review of the record evidence, the district court had substantial competent evidence before it to conclude that the three elements of a mortgage foreclosure were proven at trial. First, the Drakes signed, executed, and delivered a promissory note that reflected the amount to be paid, $54,400. Deutsche Bank was the valid holder of the note and had the right to enforce it. Second, the mortgage was recorded on May 4, 2007, at the office of the Register of Deeds in Shawnee County, Kansas. The mortgage was secured by real estate located at 2833 S.E. Indiana Ave., Topeka, Kansas. Finally, the Drakes defaulted on the promissory note. From this

8

evidence, the district court determined the Drakes were in default on their promissory note and Deutsche Bank was entitled to foreclose on the property.

Based on the trial evidence, it is apparent the foreclosure was based on substantial competent evidence and not on false bank records. Applying Kansas law to the facts shown in this case, the district court correctly determined the Drakes were in default on their mortgage.

STANDING FOR DEUTSCHE BANK TO FORECLOSE ON THE DRAKES' PROPERTY

The Drakes contend that Deutsche Bank did not have standing to foreclose on the property "because it is unconstitutional to grant Deutsche Bank standing to sue as a reward for the crimes and consumer fraud committed by Deutsche Bank and [its] agents, LPS and Morgan Stanley." While the factual grounds for this legal contention were contested at trial, it should be noted that the Drakes also have provided no legal authority to support their claim.

Standing is a jurisdictional question in which courts determine whether a party has alleged a sufficient stake in the controversy to warrant invocation of jurisdiction and to justify the exercise of the court's remedial powers on that party's behalf. A plaintiff has standing if he or she has shown:  (1) a cognizable injury suffered; and (2) a causal connection between the injury and challenged conduct. *Board of Johnson County Comm'rs v. Jordan*, 303 Kan. 844, 854, 370 P.3d 1170 (2016). Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015).

"[A]s opposed to the United States Constitution, our State Constitution contains no case or controversy provision. The Kansas Constitution grants 'judicial power' exclusively to the courts. Kan. Const. art. 3, § 1. And Kansas courts have repeatedly recognized that 'judicial power' is the "'power to hear, consider and determine controversies between rival

9

litigants.'"" [Citations omitted.]" *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 680, 359 P.3d 33 (2015).

The case-or-controversy requirement stems from the separation of powers doctrine embodied in the Kansas constitutional framework. *Gannon*, 298 Kan. at 1119. See *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 895-96, 179 P.3d 366 (2008).

As summarized, under Kansas law we must determine whether Deutsche Bank sustained a cognizable injury and whether there exists a causal connection between the injury and the challenged conduct. See *Jordan*, 303 Kan. at 854. Here, the cognizable injury for Deutsche Bank is that they were the holder of the promissory note, and the Drakes defaulted on that note. The connection between the injury and the challenged conduct is that if Deutsche Bank was successful in demonstrating the Drakes defaulted on their loan they could begin the process of foreclosure.

In summary, standing is "'a party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Jordan*, 303 Kan. at 854 (quoting *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 324, 255 P.3d 1186 [2011]). In the present case, Deutsche Bank sought judicial enforcement of foreclosure because the Drakes had defaulted on their note and, as a result, the bank had standing to seek the district court's enforcement of foreclosure.

THE TORT OF WRONGFUL FORECLOSURE

The Drakes argue that the district court erred by denying them "their right to sue Deutsche Bank for the tort of wrongful foreclosure." For its part, Deutsche Bank responds that wrongful foreclosure is not a recognized cause of action in our state "because Kansas is a judicial foreclosure jurisdiction." This issue presents a legal question subject to our unlimited review.

The Drakes submit no legal authority that provides for the tort of wrongful foreclosure in Kansas. On the other hand, Kansas is a judicial foreclosure jurisdiction. McCain, *Judicial Foreclosures in Kansas: Recent Developments Following the Subprime Mortgage Crisis*, 83 J.K.B.A. 20, 23 (September 2014). In judicial foreclosure states

"the mortgage holder must file an action in court and obtain a court decree authorizing a foreclosure sale. . . . The plaintiff must show that there is a valid mortgage between the parties and that it is the holder of the mortgage or, otherwise, is a proper party with authority to foreclose. The homeowner may respond to the lawsuit in a fashion similar to other civil cases and raise defenses to the foreclosure. If the homeowner defaults or the plaintiff otherwise prevails, the court may enter a judgment of foreclosure and order the sale to proceed." Renuart, *Property Title Trouble in Non-Judicial Foreclosure States: The Ibanez Time Bomb?*, 4 Wm. & Mary Bus. L. Rev. 111, 139 (2013).

In Kansas, the owner may redeem the foreclosed property within 12 months from the day of sale. K.S.A. 2016 Supp. 60-2414(a).

Wrongful foreclosure is an action to set aside a foreclosure sale or an action for damages from the sale on the basis that the foreclosure was improper. 59 C.J.S., Mortgages § 650. As a judicial foreclosure jurisdiction, we are not apprised of any legal authority in Kansas that has recognized the tort of wrongful foreclosure. We find no error.

DENIAL OF VIDEOTAPING DEPOSITION

The Drakes contend the district court judge issued "an illegal, hate filled order from the bench," which stated they were not allowed to videotape Lionel's deposition. They argue this order was reversible error because it helped Deutsche Bank steal the

original Saxon letters from the deposition. Deutsche Bank responds that the district court's order was well within its discretion and there is no showing of prejudice.

On July 9, 2015, at the pretrial conference, the Drakes orally requested that Lionel be allowed to videotape his deposition. The district court denied the request, finding that it would be distracting for Lionel to both operate a camera and testify at his deposition.

The control of discovery is entrusted to the sound discretion of the trial court, and orders concerning discovery shall not be disturbed on appeal absent a showing of an abuse of discretion. *Fusaro v. First Family Mtg. Corp.*, 257 Kan. 794, 808, 897 P.2d 123 (1995). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.,* 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Under K.S.A. 2016 Supp. 60-230(b)(3)(A): "The parties may stipulate or the court may order that the testimony at a deposition be recorded by other than stenographic means." We are persuaded that the district court's ruling was not an abuse of discretion. Under K.S.A. 2016 Supp. 60-230(b)(3)(A) the parties did not stipulate to this procedure and, therefore, this decision rested within the sound discretion of the district court judge. While the Drakes assert that Deutsche Bank stole the Saxon letters because the deposition was not recorded, there is no proof of this, and copies of the letters were admitted as Drakes' Exhibits A and B at trial. The Drakes' argument is without merit.

DENIAL OF MOTION TO RECUSE DISTRICT JUDGE

Finally, the Drakes claim that because the district judge signed a "controversial plea agreement," which "allows 'millions' of criminal mass forgeries. . . . to be used against people in courts of law," the district judge should have recused herself from this

case. Deutsche Bank counters that the Drakes did not comply with Kansas law in attempting to recuse the district judge.

Appellate courts have unlimited review over allegations of judicial misconduct. *State v. Kemble*, 291 Kan. 109, 113, 238 P.3d 251 (2010). See also *State v. Moyer*, 302 Kan. 892, 920, 360 P.3d 384 (2015) (unlimited review over whether a trial court judge's recusal is required); *State v. Robinson*, 293 Kan. 1002, 1032, 270 P.3d 1183 (2012) (unlimited review in evaluating an affidavit in support of a motion for recusal filed under K.S.A. 20-311d).

There are three substantive bases upon which a litigant may argue that a judge's recusal is required: (1) based on the statutory factors set forth in K.S.A. 20-311d(c); (2) based upon the standards of the Kansas Code of Judicial Conduct; and (3) based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Moyer*, 302 Kan. at 920. See generally Kansas Code of Judicial Conduct (2017 Kan. S. Ct. R. 423-466) (canons, rules, and comments guiding judges' conduct after March 1, 2009).

The party alleging judicial misconduct bears the burden of establishing that misconduct occurred and that the misconduct prejudiced the party's substantial rights. *State v. Hudgins,* 301 Kan. 629, 637-38, 346 P.3d 1062 (2015).

The Drakes assert that due process required the district judge to recuse herself. However, the Drakes provide no basis in law or fact to show that any misconduct occurred when the district judge made the ruling in the unrelated LPS case and then presided over these proceedings.

Under the Fourteenth Amendment's Due Process Clause, recusal is required when the judge is actually biased or if there is a "'constitutionally intolerable probability of

actual bias.'" *Moyer*, 302 Kan. at 925-26 (quoting *State v. Hurd*, 298 Kan. 555, 570, 316 P.3d 696 [2013]). In *State v. Sawyer*, 297 Kan. 902, 909, 305 P.3d 608 (2013), the Kansas Supreme Court reiterated the two-part test used to determine whether a case requires reversal because of a judge's failure to recuse. A judge has the duty to recuse himself or herself from the case if he or she was biased, prejudiced, or partial. If so, then the court must determine whether the failure to recuse resulted in actual bias or prejudice. 297 Kan. at 909.

The Drakes have wholly failed to prove bias, prejudice, or partiality. We have reviewed the entire record on appeal and can find no basis for a due process violation due to the district judge's failure to recuse herself from these proceedings. This claim has no merit.

Affirmed.